(No. 14980.—Reversed and remanded.)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* ANSON A. GRIFFIN *et al.* Appellants.

*Opinion filed December 19, 1922.*

1. EMINENT DOMAIN—*damages or benefits to land not taken can not be considered in estimating value of land taken.*  In condemnation proceedings the damages or benefits to land not taken cannot be considered on the question of the amount of compensation to be paid for the land taken, and where a strip of land is to be taken for a highway the only measure of compensation for the strip of land taken is its fair cash market value independent of any consequential damages or benefits to land not taken; and it is not proper to ask a witness whether the irregularity of the strip taken would affect the value of the land.

2. SAME—*when special benefits may be considered.*  In assessing compensation in eminent domain proceedings for land taken out of a larger tract of which it is a part the value of the land taken must be ascertained without any deduction for benefits; but the damages to the part of the tract not taken may be reduced by any special benefits which it may receive on account of the improvement, and these two items of assessment should be kept separate.

3. SAME—*damage to land taken should not be compared with damage to other land.*  In considering the question of damages to land not taken in the construction of a highway a witness should not be permitted to make a comparison of his estimates of the damages to the land in dispute with the damages to other land through which the proposed highway would run, as the question of damages to other land is not before the jury.

4. SAME—*danger to persons crossing proposed highway is too remote for consideration as damages.*  The possible danger to persons crossing and re-crossing a proposed public hard road is too remote to form a proper basis for damages to farm land through which the proposed road is to run.

5. Same—*what instruction as to view of premises by the jury is proper.* In a proceeding to condemn a strip of land through a farm for the construction of a public hard road, where the jury have viewed the premises, an instruction that the jury have a right to draw their own conclusions from their observations, "in connection with the testimony offered in the case," is proper, and does not permit the jury to decide the case upon their view, alone.

6. Same—*benefits which enhance market value are to be considered as special benefits.* In estimating the damage to land not taken for a hard road, any benefits which are not conjectural or speculative and which actually enhance the market value of the land are to be considered as special benefits and not as general benefits, and the fact that other property in the vicinity will be increased in value by reason of the proposed road furnishes no basis for excluding the special benefits, if any, to the particular property.

7. Same—*maintenance of fences is a proper element in assessing damages to farm land not taken in constructing hard road.* In assessing damages to farm land not taken in the construction of a proposed hard road, the expense of the maintenance of fences along the strip proposed to be taken, which runs 2695 feet through the farm, is a proper element for consideration.

Appeal from the County Court of Marion county; the Hon. William G. Wilson, Judge, presiding.

Noleman, Smith & Dallstream, and W. G. Murphey, for appellants.

Edward J. Brundage, Attorney General, C. F. Dew, State's Attorney, Charles H. Holt, and George C. Dixon, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The Department of Public Works and Buildings, in accordance with the authority given by section 11 of the act providing for a State-wide system of hard roads, (Hurd's Stat. 1921, p. 2846,) instituted proceedings in the county court of Marion county to acquire the right of way over certain land belonging to Anson A. Griffin and Emma J. Griffin for the purpose of building a hard road, being a part

of route 2, as described in section 9 of that act. The re-
spondents filed a cross-petition, asking that damages be as-
sessed on account of land which was not taken. Upon trial
by jury a verdict was rendered finding the value of the land
taken to be $214.72 and the damages to land not taken to
be $535.28, for which amount a judgment was rendered,
and the respondents have appealed.

The land consists of a tract 60 feet wide, extending
diagonally across a larger tract of 71 acres owned by the
appellants, which it enters on the east side about 150 feet
south of the northeast corner and leaves at the southwest
corner. The tract is an ordinary piece of unimproved
prairie land, fairly level and of fairly uniform quality, suit-
able for pasturage and other agricultural purposes. A road
coming from the east extends along the south side of the
land, and, crossing the Illinois Central railroad, which is at
the west boundary of the land, joins, about 300 feet west
of it, a north and south highway which leads to Patoka, a
village of about six hundred inhabitants, a half mile south.
There is a road on the east side of the 71 acres coming
from the north and connecting with this east and west road
at the southeast corner of the 71-acre tract but not cross-
ing it. The respondents are also the owners of a tract of
58 acres immediately south of the 71-acre tract, from which
it is separated by the road. The residence, barn and farm
buildings are located on the north side of this tract, facing
the road. The roadway is to be paved in the center with
concrete to a width of 18 feet, the surface varying from
the level of the adjoining land to one foot higher.

On the cross-examination of witnesses who had testified
to the market value of the land to be taken, the appellants'
counsel asked: "Do you think there would be any market
for ground cut right through the field, as this ground is?"
"Is it not a fact that the irregular shape of the strip would
affect the value of the land?" "Do you think there would
be any cash value for a strip like that?" "What do you

say is the fair value of the 3.52 acres out of the 71 acres, considering the manner in which it is taken?" Objections to these questions were sustained, and the appellants insist that this was error. In assessing compensation in eminent domain proceedings for land taken out of a larger tract of which it is a part, the value of the land taken must be ascertained without any deduction for benefits. The damages to the part of the tract. not taken may be reduced by any special benefits which it may receive on account of the improvement. It is therefore necessary that these two items of assessment should be kept separate. It is well settled that in assessing compensation for lands taken for railroad or highway purposes the land taken is to be valued as part of the entire tract of which it forms a part. The questions propounded had reference to the views of the witnesses as to the value of the land proposed to be taken when taken out of the farm as a strip, and this necessarily included the injury to the remainder of the farm as an element of damage. The questions are the same, in substance, as those which were held incompetent in the case of *Prather* v. *Chicago Southern Railroad Co.* 221 Ill. 190. In that case it was said that the only measure of compensation for the strip of land taken was its fair cash market value independent of any consequential damages to land not taken. This case was followed in *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 234 Ill. 36. In *City of Chicago* v. *Farwell,* 286 Ill. 415, the rule adopted was that the land owner was entitled to the highest cash market value of the part taken, considered as a part of the whole, for the best use to which it was adapted. "The court instructed the jury to allow appellant the fair cash market value for its highest and best use of that part of the tract taken when considered in its relation to and as a part of the entire tract, and not as a separate and distinct piece of real estate disconnected from the residue of the tract," and this instruction was approved.

A witness, Louis Parks, called by the appellee, testified that he owned 110 acres of land a mile and a half from Patoka, and stated, over the objection of the appellants, that the proposed road cuts through his land in about the same way as through the appellants'. A witness called on behalf of the appellants, who had testified that the appellants' land would be depreciated $25 an acre by the road, was asked on cross-examination if he thought the road depreciated Louis Parks' farm $25, and over the objection of the appellants was permitted to answer as he did, "Not that much." It was error to permit the witness thus to make a comparison between the damage done to appellants' land and to Parks'. He had expressed his opinion that appellants' land was damaged $25. The question of the damage to Parks' land was not before the jury. They had nothing by which to determine the amount of Parks' damage except his statement, over the appellants' objection, that the road cut through his land and had the same angles as through the appellants' land. The question asked the witness whether Parks' farm was damaged to the same extent as the appellants' was intended to affect his credit with the jury, and the appellee had no right to call upon him for such a comparison.

The appellee's first instruction told the jury that the possible danger to persons crossing and re-crossing the proposed road is so remote that it does not form a proper basis for damages and the jury should not allow any damages therefor. The appellants objected to it, but the principle announced was sustained in the case of *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152.

The second instruction was as follows:

"The court instructs the jury that as to the lands not taken the measure of the damages is the reduction, if any, in the fair cash market value thereof because of the construction of the proposed road, and if you believe from the

evidence that the property of the defendants not taken will not be reduced in such market value, but will be worth as much immediately after the taking of such lands in question and the construction of the proposed road as it was when the petition was filed, then you should not allow the defendants anything for damages to such lands not taken."

The appellants argue that it was erroneous because it omits all right to maintain the road permanently. There is no merit in this objection. The taking of the land by the State on which to build a concrete road implies a permanent construction, and no man competent to sit on a jury would think otherwise.

The third instruction is objected to. It is:

"You are further instructed that your personal inspection of the premises in question in this proceeding is a part of the evidence and is to be considered as evidence in the fixing of your verdict and you have a right to draw your own conclusions from your observations of the premises in connection with the testimony offered in the case."

The objection made to it is that it is an invitation to the jury to decide the case upon their view, alone, independently of the evidence. It is met by the language of the instruction itself, which says that the view is a part of the evidence to be considered by the jury in fixing their verdict, and that the jury have a right to draw their conclusion from their observation in connection with the testimony in the case.

The fourth instruction, which is also objected to, relates to the manner of arriving at the fair cash market value of the land taken, and what has been said in regard to the objections to the evidence disposes of the objection to the instruction adversely to the appellants. This instruction has nothing to do with the damages to land not taken, and that it could not have been understood by the jury as referring to such damages is apparent from the fact that the jury returned a verdict for more than $500 for such damages.

The objections to the fifth, seventh and eighth instructions are not tenable for the same reasons that the objections to the fourth instruction cannot be sustained.

The tenth instruction informed the jury that in determining whether property not taken would be damaged, and in what amount, by the construction of the proposed improvement, any benefits which are not conjectural or speculative and which actually enhance the market value of such property are to be considered as special benefits and not as general benefits, and the fact, if it be a fact, that other property in the vicinity of the proposed road will also be increased in value by reason of the construction and operation furnishes no basis for excluding the consideration of special benefits, if any, to the particular property in determining whether it will be damaged or benefited. The eleventh instruction was similar, and they are objected to because they do not correctly state the rule in regard to special benefits. The rule announced in these instructions agrees with that announced in *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 225 Ill. 270, and the cases there cited. That rule has since been followed in many cases.

The appellants asked the court to give the following instruction:

"You are further instructed, that if from all the evidence in this case you find that the fair market value of defendants' land not taken will be depreciated by reason of said land being cut in irregularly-shaped pieces and by reason of the inconvenience of farming such irregularly cut pieces and by reason of constructing, *and maintaining* additional fences upon the land not taken, and if you further believe that the benefits to said land, by reason of the construction of said improvement, will not offset or overcome the damages to said land not taken, and that after considering all the special benefits to said land not taken that will enhance its value by reason of the construction and maintenance of

said hard road, that the defendant is still entitled to compensation for said land not taken by reason of the damages to the same then you should award to the defendant, in your verdict, such an amount as you believe from the evidence will compensate him for the damages to the land not taken."

The court modified the instruction by striking out the italicized words, "and maintaining." This was error. The maintenance of the fences was as much an item to be taken into consideration in assessing the appellants' damages as the construction thereof. The length of the road through the appellants' land is 2695 feet, so that they were required to construct more than a mile of additional fences, and not only the burden of the construction of the fences but their maintenance was upon them, and should have been taken into consideration in assessing the damages.

The contention of appellants that the verdict is against the weight of the evidence cannot be sustained. Most of the witnesses for the appellants fixed the value of the land at from $75 to $100 an acre. The witnesses for the appellee fixed the value at from $60 to $65 an acre. The jury, after their view of the premises, fixed the value at $61 an acre. Most of the appellants' witnesses estimated the damage to the land not taken at $25 an acre. One of the witnesses for the appellee fixed the damage to the land not taken at $5 an acre and another at $10. The remaining witnesses for the appellee testified that in their judgment the land would be benefited from $7.50 to $25 an acre. The verdict was within the range of the testimony and is not manifestly against its weight. The jury viewed the premises, and their verdict cannot be regarded as contrary to the weight of the evidence.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*