THE ILLINOIS POWER AND LIGHT CORPORATION, Appellant,
*vs.* WILLIAM C. COOPER *et al.* Appellees.

*Opinion filed June 16, 1926.*

1. EMINENT DOMAIN—*what may be allowed as damages to land not taken.* Under the constitutional provision against damaging private property for public use damages are to be measured only by depreciation in market value, but it is not intended to allow a recovery of damages for every depreciation in market value caused by the construction of a public improvement, and damages are recoverable only where such depreciation is due to a direct and proximate physical disturbance of a right of property, and not where it is due to a mere fear of a remote and contingent injury which may possibly occur but whose happening is altogether speculative and uncertain.

2. SAME—*what are not proper elements of damage to adjacent property by erection of power transmission line.* In a proceeding to condemn farm property for a right of way for the erection of a high-power transmission line, inconvenience in farming may be considered in determining depreciation in market value of the farm, but the possibilities that at some time a wire or some other attachment might get down and the land owner or some of his property might be injured, and possible injury from fire or lightning, are too remote to be considered as elements of damage, and witnesses should not be allowed to use such elements as a basis for their opin-

ions as to whether the adjacent farm land on either side of the right of way, as to which there is no direct physical disturbance of a right of property, will suffer a depreciation in market value.

3. SAME—*what is proper measure of damage to a strip of farm land used for right of way for power transmission line.* In a proceeding to condemn farm land over which to erect a high-power transmission line, the measure of damage to the strip of land over which the wires are strung, and which is not actually taken for the erection of supporting towers, is not the difference in value of the use of the land but is the amount of decrease in the market value of the land resulting from the right of the power company to use it jointly with the owners for the construction, operation and maintenance of the line.

4. SAME—*when an instruction referring jury to all sources of damage shown by evidence is erroneous.* In a condemnation proceeding an instruction authorizing the jury to consider the damages arising from all the sources shown by the evidence in ascertaining the amount of the damages to the fair cash market value of land not taken is erroneous, where the evidence includes improper elements affecting market value.

APPEAL from the County Court of Warren county; the Hon. C. M. HUEY, Judge, presiding.

BURTON & HAMILTON, J. W. CLENDENIN, GRIER, SAFFORD & SOULE, and BROWN, FOX & BLUMBERG, (CHARLES LEROY BROWN, of counsel,) for appellant.

L. H. HANNA, and MURPHY & KRITZER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Illinois Power and Light Corporation filed a petition on January 27, 1925, in the county court of Warren county for the purpose of condemning an easement for the construction, maintenance, operation and repair of a high-power electric transmission line from the Keokuk dam to Monmouth and Galesburg. The petition described a number of tracts over which it was desired to construct the line, but it was dismissed as to the owners of all but eight of the tracts before the trial. From the judgment which authorized the petitioner to enter upon the several tracts of land

upon payment on or before April 22, 1925, of the compensation assessed, the petitioner has appealed.

The tracts described in the petition were strips three rods wide lying between parallel lines, each one and one-half rods from the center line of the strip measured at right angles from the center line, which was described by course and distance from its starting point throughout its length. The owners of the eight tracts filed cross-petitions claiming damages to their land contiguous to the tracts described in the petition. At the trial, after the jury had viewed the premises, the appellant introduced evidence of witnesses showing the location and quantity of each tract of land and the number of towers to be constructed on each, the quantity of land taken for each tower, the method of construction of the line, including the towers, and the manner and extent of the use to be made of the strip. The evidence on these questions was substantially the same as in the case of *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538, and the opinion in that case is referred to for a statement of the facts in this connection sufficient for the consideration of this case. That was also a case in the Warren county court for the condemnation of an easement over other land for the construction of the same transmission line involved here. The questions in the case relate only to the amount of the damages to the land not taken.

There were twenty-three towers to be constructed, one tract having one, two having two, three having three, one having four and one five. Each of the towers occupied only about one-one-hundredth of an acre, and the compensation for land actually taken was therefore small. The value of all the different tracts of land involved in this proceeding was stipulated or shown to be $250 an acre, except one tract which was shown to be worth about $175. The compensation awarded for the twenty-three tower sites was $26.45, and no question is made in regard to this amount. The damages to land not taken were found by the verdict

to be $21,801.95, which the jury divided into damages to the three-rod strips $3100 and damages to the lands outside $18,701.95. There were 16.302 acres in the three-rod strips and 982 acres outside, so that the average amount of damages within the strips was $190 an acre and outside the strips was $19.05 an acre.

The greater part of the argument of the appellant is devoted to a consideration of the nature of the land owners' right of action for damages to property not taken, under the constitutional provision which extends the prohibition against the taking of private property for public use without just compensation to the damaging of private property under the same circumstances, and of the proposition that there is no sufficient evidence to sustain the judgment for damages to land not taken outside the three-rod strips, and that the damages allowed for land not taken are excessive. These questions have been the subject of consideration of the court at this term in the case of *Illinois Power and Light Corp.* v. *Talbott, supra,* and the conclusions reached in that case are applicable here. While no damages may be allowed except those measured by a depreciation in the market value of the land, the change in the constitution of 1870 by adding to the prohibition of the taking of private property for public use without just compensation, the prohibition of the damaging of private property for public use also, was not intended to constitute every depreciation in market value of land not taken caused by the construction of a public improvement a basis for the recovery of damages either in an action at law or in a proceeding for the taking of property by the power of eminent domain. The difference in the two forms of action is immaterial; the causes of action are identical. The condition of the law in the absence of constitutional prohibition of the taking or damaging of private property for public use without just compensation, the evil intended to be reached by the provision of the constitution of 1848 on the subject, and the

reason for the extension of that provision in the constitution of 1870, are all shown in the case of *Rigney* v. *City of Chicago,* 102 Ill. 64, in which it is said: "It is a well recognized principle that where a thing not *malum in se* is authorized to be done by a valid act of the legislature, and it is performed with due care and skill, in strict conformity with the provisions of the act, its performance cannot by the common law be made the ground of an action, however much one may be injured by it. [Citing authorities.] In all such cases the statute affords a complete indemnity to those acting under its authority, notwithstanding the injury complained of would, in the absence of the statute, be actionable by the common law. [Citing authorities.] In the absence, therefore, of any constitutional provisions on the subject it would be competent for the legislature to authorize the taking or damaging of private property for public use, and the owner would be without redress so far as any common law remedy is concerned. With a view of preventing great hardships and abuses that might arise through inconsiderate legislation in the application of this acknowledged principle of the common law, the framers of the constitution of 1848 inserted therein this express provision: 'Nor shall any man's property be taken or applied to public use without the consent of his representatives in the General Assembly, nor without just compensation being made to him.'" In considering what additional class of cases the framers of the new constitution intended to provide for which were not embraced in the old, the court said: "While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property

for which the law does not, and never has, afforded any relief. * * * In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

The course of the trial was like that in the *Talbott case.* The petitioner introduced testimony as to the value of the tower sites and the extent of the use to be made of the three-rod strips. The defendants then introduced evidence as to the value of their lands and their depreciation by reason of the construction and operation of the line. The witnesses testified as to the value of the use of the strips before and after the construction of the line and as to the value of the land outside the strips before and after its construction. No evidence was offered by the petitioner as to market value. The witnesses for the defendants testified generally that the value of the use of the strips was decreased by the construction of the line in various sums ranging from $50 to $175 an acre, though one testified that the value after the construction would be only $25 an acre and two that it would be nothing. The depreciation of the land outside the strips most of the witnesses placed at $25 an acre, some more. The same witnesses who testified in the *Talbott case* testified in this case and were examined in the same way. None of the witnesses who testified to damages stated on their direct examination in what the damages consisted. They were cross-examined as to the basis

of their opinions.   None of them had any knowledge, acquired either by experience or observation, of the effect of a power line on the market value of land.   The elements of damage which they took into consideration were danger of injury from electricity by reason of broken wires, danger from fire, danger from lightning, danger of trespass by the appellant's employees and others, and inconvenience in farming.   All these elements were not mentioned by all the witnesses but every witness mentioned some of them. Damages being recoverable only where there is a physical disturbance of a right of property, the mere. fear of a remote and contingent injury which may possibly occur but whose happening is altogether speculative and uncertain is not regarded by the law as an element entering into the damages which may be allowed to the owner.   The damages must be direct and proximate, and not such as are merely possible or may be conceived by the imagination. Whether the line would expose persons and stock to danger was a question of fact, and no evidence that it would do so was offered.   What is said in the *Talbott case* on the question of this evidence is applicable here.   This question of danger, like other questions of fact, must be determined by the testimony of witnesses having knowledge through experience, observation and sources of actual information as to the fact.   Electricity is an element of great potential danger, in the control and use of which great care is necessary, and it may be that persons having no actual knowledge of the practical operation and effect of such lines heavily charged with electricity may fear the dangers which they imagine exist because of the location of the line on the property in question.   If this is so, and by reason of such fear the persons affected are not willing to buy the lands on which the line is constructed, the law cannot regard the depreciation created by such a cause as resting upon any substantial basis and cannot allow any compensation on account of any claimed depreciation which is due

to mere fear founded in reality upon lack of knowledge and not justified by the facts. *Alabama Power Line* v. *Keystone Lime Co.* 191 Ala. 58.

Inconvenience in the use for farming of the lands not taken, which it is shown by the evidence will be caused by the construction and maintenance of the tower and by the existence of the right of appellant to use the three-rod strips in the manner shown, is proper to be considered by the jury so far as it is shown that such inconvenience will affect the cash market value of such land. The opinions of witnesses on this question are competent and should be considered by the jury. Opinions, however, which, besides being based upon the inconvenience in farming, are also based in part upon the consideration of the other elements of damage which have been held incompetent, or one or more of them, should not be admitted in evidence. In view of the assessment of the damages outside the three-rod strip at $19 an acre, and the fact that the opinions of the witnesses, upon which the verdict was founded, of damages of $25 an acre were based upon elements of damage which could not legally be taken into consideration in estimating damages, as well as upon elements which could properly be taken into consideration, the amount of the verdict in this particular is excessive. Opinions as to damage based upon illegal elements ought not to be submitted to the jury and do not form a proper basis for a verdict.

The damages allowed for the land not taken were excessive. The seventeen witnesses for the defendants testified to depreciation in the market value of the use of the strips of land from $50 an acre to $175, except three, two of whom testified that the value of the use after the construction of the line would be only $25, and the other, nothing. The verdict exceeded the highest estimate except that of the last three witnesses in the case of seven of the tracts, the amounts ranging from $181.21 to $208.33 an acre, and the depreciation in the case of the other tract, the

least valuable of all, being $154.16 an acre. These amounts are not justifiable in any view of the evidence. The evidence as to these tracts was introduced and award of damages made on an erroneous basis. The witnesses were asked, over the petitioner's objection, their opinions as to the fair cash market value of the use of the strips before and after the construction of the line, and the jurors were erroneously instructed by the defendants' instruction 11 to determine the fair cash market value of the land included in the sites of the towers, and, as to the remainder of the strips, if they found that the fair cash market value of the use of such strips would be depreciated by the construction of the line and the creation of the easement of ingress and egress, then in determining the amount of such damages they should consider only those elements, as shown by the evidence and their view of the premises, bearing directly upon the fair cash market value of such use and as tending directly to depreciate the use of such strip in its fair cash market value. The measure of recovery to which the land owners are entitled as damages to land not taken is not the difference in value of the use of the land, but is the amount of decrease in the market value of the land resulting from the right of the appellant to use it jointly with the owners for the construction, operation and maintenance of the line. *Illinois Telegraph News Co.* v. *Meine,* 242 Ill. 568.

The court refused to give to the jury the following instruction asked by the appellant:

"The court instructs you as a matter of law that when a part of a tract of land is taken for an improvement, and damage is claimed to the balance of the tract not actually taken, then in passing upon the question of such claimed damage, you should not allow any damage on account of a possibility that at some future time a transmission wire, or some other attachment, might get down, and the land owner, or some of his property, might be injured thereby.

Such element of damage is too remote to be considered by the jury in arriving at their verdict."

This instruction should have been given. In *Illinois, Iowa and Minnesota Railway Co.* v. *Freeman,* 210 Ill. 270, an instruction was refused that the danger to persons crossing the proposed tracks was so remote that it did not form a proper basis for the assessment of damages, and another that the law required the petitioner, in the operation of its railroad, to use the most improved contrivances to prevent the escape of fire, and that it would be responsible for damages occasioned through any negligence in that regard, and that the jury, in arriving at their verdict, should not consider any loss or damage that might accrue from such negligence. It was held erroneous to refuse these instructions. The giving of the first of these instructions was approved in *Department of Public Works* v. *Griffin,* 305 Ill. 585. The second of these instructions is substantially the same as the third instruction for the appellees, which was approved in *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380, in these words: "The amount allowed should be sufficient to cover all the actual damage occasioned by reason of the construction of the road, for the land taken, for all physical injuries to the residue, and for all inconveniences of every character actually produced, but nothing should be allowed for imaginary or speculative damages or such remote or inappreciable damages as the imagination may conjure up and which may or may not occur in all the future. The increased hazard from fire resulting from the use of steam as a motive power, in most cases, may be reckoned among the imaginary dangers that may or may not occur, and in case they do, the law affords a speedy and effectual remedy. No doubt, if the road was constructed so near the owner's buildings as that the danger from fire would be real it would be an element of increased damage, but where the buildings are at such a distance that the danger is not real but amounts to nothing more than a mere apprehension the

rule is different. It is not shown the dangers from the location of the road are so real as to be a constant exposure. No such facts appear, and hence the instruction was not erroneous in this case." The appellant was entitled to the instruction that the possibility that at some time a transmission wire or some other attachment might get down and the land owner or some of his property might be injured thereby was too remote to be considered by the jury in arriving at their verdict.

The court erred also in giving the following instruction:

"The court instructs the jury that one of the issues in this case for the jury to consider is whether or not the fair cash market value of the several tracts of land lying outside the three-rod strip but contiguous thereto, will by reason of the erecting of the electric power line upon said strip and the establishment of an easement of egress and ingress thereon, be damaged in their fair cash market value as of date of January 27, 1925, then you are instructed if you find from the evidence and your view of the premises that the fair cash market value of such tracts of land on said date taken as a whole, to be damaged by reason of erection of said electric power line and creating of said easement on said three-rod strip, then in determining the amount of such damages you should consider only those elements as and if shown by the evidence and your view of the premises to bear directly upon the fair cash market value of said lands."

The meaning of this instruction is obscure and indefinite because of the faulty, incomplete and confused construction of the sentence as well as the confusion between the amount of the damages, if any, and the issue as to whether or not the fair cash market value of the land lying outside the three-rod strip will be damaged by reason of the erection of the electric power line on the strip and the establishment of an easement of ingress and egress, but it is to be inferred that the court intended to tell the jury by

the last clause of the instruction that in determining the amount of damages they were to consider such elements as were shown to bear directly upon the fair cash market value. Among the elements of damage which the witnesses testified to as the basis of their opinions of depreciation in the market value, were danger of injury from electricity by reason of broken wires, danger from fire, danger from lightning and danger of trespass by the appellant's employees and others. These were not proper elements to form the basis for opinions as to depreciation in market value and manifestly were therefore not proper elements for the consideration of the jury in the determination of the amount of damage to the land not taken. They had all, however, been admitted, over the appellant's objection, as competent evidence and by this instruction the jury were told to take them into consideration in determining the amount of the damage. An instruction authorizing the jury to consider the damages arising from all the sources shown by the evidence in ascertaining the amount of the damages to the fair cash market value of land not taken is erroneous where the evidence included improper elements affecting market value. *Chicago and Alton Railroad Co. v. Scott,* 232 Ill. 419; *St. Louis and Illinois Belt Railway v. Barnsback,* 234 id. 344.

The appellant requested an instruction substantially equivalent to the instruction considered and condemned in *Chicago, Ottawa and Peoria Railway Co. v. Rausch,* 245 Ill. 477, and *Chicago and Western Indiana Railroad Co. v. Heidenreich,* 254 id. 231, concerning the right of the jury to disregard the evidence of witnesses who have magnified or exaggerated the value of the land taken or the damages to the land not taken on account of interest in the suit, prejudice, want of knowledge or experience or truthfulness. The court modified the instruction and gave it as modified. The instruction should have been refused in accordance with

the reasoning in the *Rausch case, supra*.  The court's modification made a material change, but the instruction as changed did not state a correct rule of law and should not have been given.

The judgment is reversed and the cause remanded to the county court.    *Reversed and remanded.*