(No. 24981.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* WILLIAM W. BARTON *et al.* Appellees.

*Opinion filed February 20, 1939.*

John E. Cassidy, Attorney General, and Harry B. Hoffman, for appellant.

Henry E. Pratt, and Roy P. Hull, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

The Department of Public Works and Buildings of the State of Illinois filed its petition in eminent domain in the county court of Peoria county to obtain certain of the property of the appellees, and others, to be used as right-of-way for State Bond Issue Route 9. The jury fixed the value of the land taken at $8000 and the damage to the land not taken at $5000, and the Department of Public Works and Buildings appeals to this court from the judgment entered upon the verdict by the court.

The petition of appellant was in the ordinary form, and appellees filed a cross-petition setting forth, by legal description, all of the land not taken, specifying a number of elements of damage they claimed to have suffered.

Several errors are assigned by appellant, but the principal ones urged are (1) the court permitted improper evidence of value of land taken and damage to land not taken to be received by the jury; (2) the court misdirected the jury in its instructions; (3) the court refused instructions to the effect that damage to lands not taken could be dimin-

ished by benefits received by such land, and (4) that the verdict of the jury was excessive.

To properly understand the questions of evidence and the rulings of the court, it is necessary to have an accurate understanding of the location of the property and of the proposed road through it. The road extends in a westerly direction from Peoria, to and through the village of Bartonville, where it makes a long gradual curve to the south and west. Adams street in the village of Bartonville runs in a southwesterly direction until it comes to the north side of the property of appellees and then extends due west. As the streets were located at the time of the filing of the petition the Barton property had a frontage on the part of Adams street running east and west for a distance of 200 feet, or more, and a small tract along the street where it runs at an angle. The village has a population of around two thousand people and the north end of the Barton property is in the business district, although there are no business buildings on either side of the street at this point, except an oil station opposite the property. The new road, however, turns to the southwest through the property from that part of Adams street where the street turns from the southwest to the west, and in turning to the south the land taken for the right-of-way will cut off all of the Barton frontage on Adams street except about 50 feet, and continues through the property to the southwest corner about 800 feet away, in addition to taking the small tract along the angle above mentioned.

Appellees' property would be rectangular in shape, about 435 feet east and west by 670 feet north and south, except for the fact that two lots, aggregating 110 feet wide and 303 feet long, belonging to George M. Borin and a Mr. Gerdes, face Adams street between the west line of the Barton property and the intersection of Adams street with the north and south street known as McKinley avenue. The west line of appellees' property extends south from the south-

west corner of the Gerdes lot along the east side of McKinley avenue for a distance of 336 feet. The south boundary is the section line and Washington street the east boundary. One and thirty-six hundredths acres are taken for right-of-way purposes, consisting of between one-fifth and one-sixth of the entire tract. The land is more elevated on the west side than the east side, there being an abrupt drop in the surface easterly on the proposed right-of-way; as the road enters the property near the northeast corner it is approximately level with the surface and as it passes through the property to the southwest, there is an upgrade of about twenty feet, with cuts through the property ranging from 1 to 7 feet in depth. The proposed right-of-way includes all of the land of the Bartons from the east side thereof to the west boundary line. Where it enters the property it cuts off the corner of the lot upon which the residence is located and also takes part of the ground upon which the barn is situated, and where it leaves the property, cuts about 50 feet from the front yard of a four-room dwelling owned by them, leaving only a few feet between the edge of the right-of-way and the front of the house.

The proposed improvement will be a concrete roadway, consisting of four traffic lanes, with eight feet additional on each side for a parkway, and, outside the parkway on each side, a concrete sidewalk. Back a few feet from the sidewalk the property will be graded, sloped and sodded.

Upon the trial of the cause the plaintiff produced two witnesses who testified that the cash market value of the property taken was $3385 and the damage to the land not taken $1300, specifying the particular items of damage consisted of taking part of the front yard of the residence, moving the barn off of the right-of-way, destroying trees, shrubbery and fences, rebuilding the driveway and miscellaneous items necessary to make the remaining part usable.

The witnesses for the defendants considered the part of the property upon Adams street as business property, and

the part of the property upon McKinley avenue as residence property, and in fixing the value set it up in different tracts and appraised each individual tract. The property considered damaged was 150 feet east of and across the right-of-way where it would substantially parallel McKinley avenue, and land of 200-foot yard depth north and south, in like manner paralleling Adams street. After thus dividing the property there was an approximately triangular tract left in the part taken between the proposed lots off of the McKinley avenue side and the Adams street side, which could not be utilized for lots. For the land taken, as described in the petition, values ranging from $11,615 to $14,000 were fixed, and damages to the land not taken from $4400 to $6798.

The evidence as to the damage to the land not taken, however, was not based upon the damage to the entire remaining unused tract, but only to that part of the untaken land adjoining the proposed right-of-way on the east, and the untaken ends of the proposed lots fronting on Adams street. There was no testimony as to damage to the land constituting the balance of the tract fronting on Washington street on the east or the section line on the south. In other words, the testimony with respect to damage was confined to the part of the land adjacent to the easterly right-of-way, and approximately 150 feet wide, and the value of the land taken and damage to the land not taken was fixed as though there were a row of lots established and laid out for residence purposes on McKinley avenue, and a row of lots plotted and laid out for business purposes on Adams street, and the remainder, owned by appellees, considered as having frontage on a proposed road that would, in the event of its being constructed, be available for plotting into lots.

The evidence shows there is business property on Adams street coming up close to the Barton property but no buildings on the south side between his northeast corner and the

intersection of Adams street and McKinley avenue, nor are there any building lots laid out on the east side of McKinley avenue, and none of the Barton ground is platted into lots. The valuation of the property by defendants in this way was objected to by the petitioner and such objections overruled.

In ascertaining the compensation to be paid to an owner of land in eminent domain proceedings, the rules are comparatively simple. The owner must first be compensated for the full value of the land actually taken, without diminution in any manner; he is entitled to damages, if shown by the evidence, for the remaining land not taken, and should there be any special benefit to any part of the land not taken, brought about by the improvement, such special benefit may be offset against damages to land not taken. In determining these different amounts the verdict of the jury should be within the range of the testimony, and it has a right to view the premises and from such view and testimony fix the total compensation to be awarded.

The value of the land actually taken for the improvement is to be fixed with a view to the highest and best use to which it is available, even if, at the time of the filing of the petition, the land is not being put to such use. (*Southwest Chicago Drainage District* v. *McMahon,* 329 Ill. 478; *City of Chicago* v. *Chicago Title and Trust Co.* 331 id. 322.) The measure of compensation for the land taken, however, must be its fair cash market value, independent of any consequential damages or benefits to land not taken, and it has been held that it is not proper to ask a witness whether the irregularity of the strip taken would affect its value. (*Department of Public Works* v. *Griffin,* 305 Ill. 585.) The damage, if any, to land not taken, is ascertained by the difference between the fair cash market value of the property, unaffected by the improvement, and its fair cash market value as affected by it. (*Department of Public Works* v. *McBride,* 338 Ill. 347; *Brand* v. *Union Elevated Railroad*

*Co.* 258 id. 133.) The special benefits, if any, accruing to the property, may not be set off against the land taken, but may be taken into consideration as reducing or completely offsetting any damages to the remaining part of the land. (*City of Chicago* v. *Mecartney,* 216 Ill. 377.) In general, the effect upon land not taken is fixed by proving the difference between the fair cash market value of the property, unaffected by the improvement, and as affected by it, as this will necessarily embody not only any damage but also any special benefit brought about by the improvement. (*Department of Public Works* v. *Caldwell,* 301 Ill. 242; *Forest Preserve District* v. *Chicago Title and Trust Co.* 351 id. 48.) In the last case the court says, in considering this question: "It goes without saying that damages can not exist if the value of the property is not lessened, but, on the contrary, is enhanced and the benefit which the land-owner secures as an owner of property is special benefit. In determining whether land has or has not been damaged, the jury should consider whether the market value of the property remaining will be enhanced by the improvement, although other property in the vicinity will likewise be benefited."

An examination of the testimony in the light of these general principles discloses that defendants' witness, Light-body, considered the property taken facing Adams street as business property and that fronting on McKinley avenue as residence property, and fixed its value at $11,615. This valuation included the damage to the barn which was not wholly on the property taken. The damage to the land not taken was fixed upon the assumption there was a strip 150 feet in depth east of the right-of-way, where it substantially paralleled McKinley avenue, and a strip 200 feet in depth easterly of the right-of-way and opposite the frontage on Adams street, and for this strip the damage was fixed at $12,748. His testimony is to the effect that he was appraising the value of the land taken and the damage to *the land*

*adjacent.* He qualifies the statement somewhat by saying that the damage is ascertained by going back as far as you have to go, as there is a drop-off in grade to the east, and dirt would have to be filled in to make a proper size lot, and concludes by saying that the actual right-of-way, plus a strip of ground 150 feet wide back from the easterly side of the right-of-way, has a value of $25,000. This includes land taken and land not taken. It did not include all the remaining land. A motion to exclude the witness' testimony as being upon an improper basis was denied.

The witness, Addison, used substantially the same basis but went into a little more detail as to the elements of damage, his value being $11,775 for the land taken and $6798 for the land not taken. A motion was made to exclude this testimony and denied by the court.

The other two witnesses for defendants, confined themselves to an opinion as to the value of land taken, and a general opinion as to damages to land not taken, without specifying the elements constituting the damage. No evidence was offered by the defendants that went to the value of the whole tract not taken, either before or after the improvement, except that one witness testified that the value of the tract not taken or damaged was $7500, but there is no evidence of the value of the entire tract not taken, except in the manner above pointed out.

While it appears to be true that, were the improvement not constructed, there is a probability that the land facing both Adams street and McKinley avenue could be laid out into lots, and for such purpose would have a greater value, yet the assumption that land to the east of the right-of-way, and at distances varying as much as 200 feet back from both the streets mentioned, would, in the absence of proof, likewise have subdivision value, appears to be somewhat speculative, and certainly would necessitate the proof of damage to all the property not taken and not be confined to part of it. It eliminated from consideration the effect, upon the whole

remaining tract, of the prospective lot-value added to the land contiguous to the right-of-way, testified to by appellees' witnesses.

Had the proper measure of valuation and damage been followed, the jury, after its view, would have been enabled, as pointed out in *Forest Preserve District* v. *Chicago Title and Trust Co. supra,* to determine whether the damage to the whole remaining tract amounted to as much as testified to, or whether it would have been diminished somewhat by benefits brought about by the assumed subdivision district west of the right-of-way.

The establishment of the damage to the land not taken in this way was error. Undoubtedly many of the elements considered by the witnesses could be shown, but it should have been in connection with the whole tract and not a limited portion of the tract.

It was error also to refuse the instructions tendered by the petitioner, offered for the purpose of directing the jury that it might consider both damages and special benefits to the land not taken, in arriving at the verdict. This is emphasized by the fact that the witnesses for the petitioner specified, in particular, the elements of damage that would accrue to the property not taken, consisting principally of expense necessary to remove buildings and to place the remaining property in proper shape for use, while appellees' witnesses added the elements above noted. As the case was presented to the jury it received no instructions as to the true measure of ascertaining damages for the tract not taken.

The point is raised that appellant is in no position to complain of the refused instructions because section 67 of the Civil Practice act was amended in 1937 by omitting the words "exceptions to the giving or refusing of any instructions may be entered at any time before the entry of final judgment in the case." (Laws of 1937, p. 990.) The contention is made that this brings the practice on taking exceptions to instructions given or refused by the court, back

to what it was at common law, namely, that exceptions would have to be taken in court before the jury retired. We deem it unnecessary to go into a discussion of the effect of the elimination of the words in section 67, *supra,* before the amendment of 1937, because section 80 of the Civil Practice act, (Ill. Rev. Stat. 1937, chap. 110, par. 204,) provides: "No formal exception need be taken to any ruling or action of the court in any matter or proceeding in order to make such ruling or action a ground for review." The action of the court in refusing the instructions was a ruling in the proceeding, and it is quite obvious that if an exception is not necessary to make any ruling of court a ground of review, it would be taking a narrow view of the intent of the General Assembly in enacting the Civil Practice act to hold the courts are relegated back to the common law practice only in the matter of giving or refusing instructions. This point is without merit.

In view of the foregoing, a new trial is necessary, and the judgment of the county court is reversed and the cause remanded for a new trial. *Reversed and remanded.*