VIVIAN E. KOZAK, Plaintiff-Appellant, *v.* RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee.

First District (4th Division)    No. 80-2458

Opinion filed September 3, 1981.

Kevin M. Forde and Marshall E. LeSeur, both of Chicago (Finn, LeSeur & Challos, Kevin M. Forde, Ltd., and Katrina Veerhusen, of counsel), for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Mary K. Rochford, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The widow of a deceased fireman who died from service-related injuries filed a petition with the Retirement Board (hereinafter called Board) contending that the amount of the pension paid was being improperly determined. The Board disagreed, and the circuit court affirmed this determination. The principal issue before this court is whether when a statute requires that the widow be paid a percentage "of the current annual salary attached to the classified position to which the fireman was certified at the time of his death" the pension must be increased as the

salary attached to the position increases. The trial court held that it did not. A secondary issue not ruled upon by the trial court is whether the widow is barred by laches since she waited over 5½ years after the Board, without giving any notice to the plaintiff, changed its interpretation of the statute. We hold that the statute clearly required the pension to be computed according to the current annual salary and not the salary at the time of decedent's death. We also find no laches. Accordingly we reverse and remand the trial court's decision.

Plaintiff's husband, a Chicago Fire Department battalion chief, was killed fighting a fire on October 15, 1970. As a result of his death, plaintiff became entitled to a widow's compensation annuity for widows of servicemen who died because of the performance of acts of duty under section 6—140 of the Illinois Pension Code. (Ill. Rev. Stat. 1969, ch. 108½, par. 6—140.) This statute was amended in 1971, effective January 1, 1972, to read as follows:

> "The annuity for the widow of a fireman whose death results from the performance of an act or acts of duty shall be an amount equal to 50% of the current annual salary attached to the classified position to which the fireman was certified at the time of his death and 75% thereof after December 31, 1972, and it shall be payable to the widow until the fireman, had he lived, would have attained the age prescribed for compulsory retirement.
>
> Thereafter, the widow shall receive annuity of an amount equal to 40% of the current annual salary attached to the classified position to which the fireman was certified at the time of his death. The benefits provided in this Section shall be paid to all widows who qualified to receive said benefits before the effective date of this amendatory Act and to those widows who qualify after the effective date.
>
> Unless the performance of an act or acts of duty results directly in the death of the fireman, or prevents him from subsequently resuming active service in the fire department, the annuity herein provided shall not be paid; nor shall such annuities be paid unless the widow was the wife of the fireman at the time of the act or acts of duty which resulted in his death." (Ill. Rev. Stat. 1971, ch. 108½, par. 6—140.)

During the years 1972 and 1973 the Board paid plaintiff·and all other widows similarly situated benefits based on the current annual salary for the positions held by the firefighters at the time of their deaths. Accordingly, when the salaries of the various positions were increased each year, the widows' annuities were adjusted to reflect that increase. Subsequently the Board decided that this interpretation of the statute was incorrect. For this reason, starting January 1, 1974, despite the fact the statute has not

been changed, the Board has refused to adjust plaintiff's annuity when increases were made in the salary for the classified position held by her husband at the time of his death. In other words, since January 1, 1974, plaintiff has been paid 75 per cent of the salary paid in 1973 for her husband's former position although the salaries currently paid have increased. No notice was ever sent by the Board to the widows of this change in the interpretation of the statute.

The Board, relying on *Sup v. Cervenka* (1928), 331 Ill. 459, 163 N.E. 396, and *O'Neil v. Harding* (1924), 314 Ill. 516, 145 N.E. 593, contends that the pension is to be based on the salary paid at the time of the fireman's death. Both cases did so hold. But the statute in *Sup* which applied to all firemen becoming disabled, and the statute in *O'Neil* which applied to all firemen retiring after 20 years' service only provided "he shall be paid a monthly pension equal to one-half the amount of salary attached to the rank which he may have held * * * at the date of his retirement." Neither statute provided for a pension based on the *current* annual salary attached to the position as does the statute in this case.

According to Random House Dictionary of the English Language (unabr. ed. 1966), "current" is defined as "passing in time or belonging to the time actually passing; new, present, most recent." It has been so defined in the cases. (*Leitner v. Lonabaugh* (Wyo. 1965), 402 P.2d 713; *Graham v. Miller* (3d Cir. 1943), 137 F.2d 507; *Warren Co. v. Commissioner of Internal Revenue* (5th Cir. 1943), 135 F.2d 679; *American Fruit Growers, Inc. v. United States* (9th Cir. 1939), 105 F.2d 722; *Pecos Mercantile Co. v. Texlite, Inc.* (Tex. Civ. App. 1933), 65 S.W.2d 811, *aff'd* (1936), 128 Tex. 57, 96 S.W.2d 73; *Commissioner of Internal Revenue v. Keller* (7th Cir. 1932), 59 F.2d 499; *State ex rel. First National Bank v. Bartley* (1894), 39 Neb. 353, 58 N.W. 172.) Words used in a statute are to be given their plain and ordinary meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222; *Richardson v. Kitchin* (1979), 75 Ill. App. 3d 961, 394 N.E.2d 796.) That is the meaning to be given "current" in this case; the plaintiff is to be paid a pension based on the annual salary belonging to the time actually passing, the new or present salary.

■■ If the word "current" had not been inserted into the statute, then *Sup* and *O'Neil* would be applicable and controlling. It is presumed that the legislature acted with full knowledge of the judicial decisions concerning such prior and existing law and legislation. (*Heineman v. Hermann* (1943), 385 Ill. 191, 52 N.E.2d 263; *Metropolitan Trust Co. v. Bowman Dairy Co.* (1938), 369 Ill. 222, 15 N.E.2d 838; *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1, *appeal denied* (1975), 60 Ill. 2d 597; *Grutzius v. Armour & Co.* (1941), 312 Ill. App. 366, 38 N.E.2d 773, *appeal denied.*) The legislature was fully aware that if it desired the result argued for by the

Board, it need merely enact the statutory language set forth in *Sup* and *O'Neil*. Knowing this, it deliberately chose not to do so, but chose to alter that language by inserting the word "current" with all of its meanings. Accordingly, it is obvious that the legislature did not intend to limit the pension as it was limited in *Sup* and *O'Neil*. Instead it intended to award, as the statute clearly states, a pension based on the current annual salary not a salary fixed at a past date, the date of decedent's death. Indeed were we to give the statute the construction argued for by the Board, we would have to delete the word "current" as being superfluous and meaningless. But a statute must be so read and construed, if possible, that no word, clause or sentence is rendered superfluous or meaningless. *Arnold v. Board of Trustees* (1981), 84 Ill. 2d 57, 417 N.E.2d 1026; *Peacock v. Judges Retirement System* (1957), 10 Ill. 2d 498, 140 N.E.2d 684; *Stiska v. City of Chicago* (1950), 405 Ill. 374, 90 N.E.2d 742; *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582; *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.

This conclusion is reinforced by the legislative history in this case. The legislative synopsis to the house bill reads: "* * * to provide payment to the widow of a fireman killed on duty of 75% of his current annual salary had he lived to date of compulsory retirement."

■■■ The Board also contends that the plaintiff by waiting 5½ years to file her claim was guilty of laches. Laches is an equitable doctrine which requires that the party who seeks equity must do equity. (*Fruhling v. County of Champaign* (1981), 95 Ill. App. 3d 409, 420 N.E.2d 1066.) Laches is not found merely because of a lapse of time. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499.) It is primarily a question of the inequity of permitting the claims to be enforced. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499; 27 Am. Jur. 2d *Equity* §152 (1966).) Before laches can be found, there must be an *unreasonable* delay by the plaintiff in enforcing her rights. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499; *Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 89 N.E.2d 392; 27 Am. Jur. 2d *Equity* §163 (1966).) Thus, laches will not apply until such time as the party against whom the defense is asserted discovered or should have discovered the facts. (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65.) The Board contends that the plaintiff should have known of the change of interpretation because she should have known that salaries had not been frozen for the 5½ years that her annuity had been frozen. However, in light of the fact that the Board had full

knowledge of its change in interpretation of the statute, and deliberately chose not to convey this notice to plaintiff but chose to conceal it from her, it would be unconscionable to permit the Board to benefit by its concealment by claiming plaintiff should have known the facts anyway. If the Board wished to avoid any delay in contesting the issue and any prejudice it now claims resulted, it could simply and easily have sent notice to plaintiff along with the pension check.

The Board contends that it is prejudiced because it operates on a limited and carefully planned budget and it must be able to predict its financial needs with reasonable certainty and because of the delay it took no steps to increase the pension reserves in order to meet any possible increase in the annuities. Since this court has found that the delay was not unreasonable, it is immaterial whether the Board was prejudiced by plaintiff's conduct. But we hold that it was not so prejudiced.

■■ The Board was fully aware of the language of the statute. It was also fully aware that the statute could be interpreted to provide for an annuity increasing when salaries were increased since it, itself, had so interpreted the statute for the first two years. The plaintiff is not the only widow of a fireman who died because of service-related injuries. The Board should have known that at any time while the statute was in effect, and it still is in effect, such a widow, whether one made a widow before 1974 or one made a widow recently, could file a class action challenging the Board's interpretation of the statute. In light of this possibility the Board could have established reserves to meet the contingency. Furthermore, as already noted, any prejudice suffered by the Board is due to its own failure to give plaintiff notice of the change of interpretation.

Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

JOHNSON and GOLDBERG, JJ., concur.