THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, *v.* WILLIAM S. LAWLER *et al.*, Defendants-Appellees.

Third District No. 82—220

Opinion filed January 6, 1983.—Modified on denial of rehearing April 8, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (Raymond E. Meader, James R. Brumund, and Leo N. Cinquino, Special Assistant Attorneys General, of counsel), for appellant.

Timothy J. Rathbun and George E. Sangmeister, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, and Albert H. Krusemark, Jr., both of Joliet, and Joseph J. Tryner, of Wilmington, for appellees

JUSTICE SCOTT delivered the opinion of the court:

This appeal arises from 10 separate petitions to condemn filed by the Department of Transportation to acquire land necessary to improve and widen existing State highways. In all 10 cases the land ac-

quired included the underlying fee title for land already within the State highway right of way but for which fee title was vested in the adjoining farm owner and the fee title to land outside the State highway right of way which would be used for the widening or improvement of existing highways. A common issue of law exists in each case, as to the proper valuation of the condemned land, and in the interest of efficiency and judicial economy, the cases were consolidated by order of the circuit court of Will County.

In each case the defendant farm owners contended that the taking of fee title to the underlying right of way was, as a matter of law, to be valued as land outside the right of way based on section 4—501 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 4—501). The pertinent language of the statute follows:

> "When any farm land is acquired for State highway purposes by the exercise of the right of eminent domain, the rate of compensation to be paid by the acquiring agency shall be computed by taking into consideration the total acreage originally involved in the farm land parcel, including that portion of such parcel already part of a right of way for highway purposes but for which legal title lies in the owner of the parcel."

The Department contended that the fair cash value of all the land taken was a question of fact for the jury to determine and consideration should be given to the effect of the right of way for highway purposes on the value of land so encumbered.

The Department filed a motion *in limine* to bar the defendants' valuation testimony based on their alleged misinterpretation of section 4—501. That motion was denied by the circuit court, the judge there concluding "that Defendants are as a matter of law entitled to be paid 100% of the fee market value for land encumbered by said right of way for highway purposes as if the same were not so encumbered." The lower court relied on section 4—501. The case proceeded to trial, with the defendants offering their valuation testimony and the Department offering its valuation testimony, the latter by offer of proof. Whereupon, the circuit court directed verdicts for the defendants based upon certain stipulated facts and the ruling on the motion *in limine.*

The issue presented by this appeal, the proper construction of section 4—501, is one of first impression. More precisely, the language giving rise to this dispute was added to section 4—501 by the General Assembly in 1979. It took the form of House Bill 567. No reviewing court has previously sought to interpret this recent statutory addition, and to guide us we have only the traditional rules of statutory con-

struction and legislative history. We turn first to the legislative history, and specifically the explanation of the bill provided by the bill's sponsor, Representative Thomas Ewing, on the floor of the House of Representatives:

> "Mr. Speaker and Ladies and Gentlemen of the House, this Bill is put in to clarify the responsibility of the Department of Transportation, to pay for right of way which they take in the construction of new highways. Much of the ground, or some of the ground, which has been taken for highway construction, may have already been in use for a town to country road for rural people. The title for this real estate still belongs in the landowner. They have been paying taxes on it for many years. The Department of Transportation has refused to make payment for the value of this land, whatever it might have been in the appraisal because it was already in road use. The thing they failed to take into consideration is that when they take this land and put in a superhighway, many times they not only cut through the farm, but they make it unaccessible to those people for the use in which it was originally given in easement. This Bill merely directs that the Department of Transportation will pay for the fee title, whenever they take it, even if the fee title is encumbered with a road easement."

No further discussion of the legislation exists in the debates of the Illinois House or the Illinois Senate.

Several comments are noteworthy in the explanation of House Bill 567. First, the legislators were given to understand that under then existing law, the Department had "refused to make any payment" for the fee interest in land already encumbered by an easement, regardless of what value "it might have been [assigned] in the appraisal." Secondly, this practice was thought by the sponsor to be inequitable because it "failed to take into consideration" the adverse effects when superhighways "cut through the farm." Finally, the sponsor in explaining House Bill 567 expressed concern that the new highways "were unaccessible to those people" whose fee titles were condemned without payment. It is clear that the sponsor intended to require the Department to "pay for the fee title." It is also clear that the sponsor considered the alleged existing practice of refusing to make any payment patently unfair. What is unclear is whether the sponsor, and the legislators who followed his explanation of the statutory amendment, would value the fee title as if unencumbered by easement, or discounted for the burden of the easement.

An analysis of the evils which the sponsor sought to remedy is

elucidating. One evil is the damage to farm land which occurs when it is dissected into smaller parcels by highway improvements. An 80-acre farm which is partially condemned for road purposes leaving 75 acres remaining has a greater value if the remaining acres all lie on one side of the road rather than 10 acres on one side and 65 acres on the other. Conversely, the value of the fee title condemned is greater or lesser depending on the remaining configuration of the acreage.

The second evil, that of loss of access, also affects the value of the fee title condemned. In the previous example, the value of the condemned five acres is far greater if those acres represent the farm owner's access to markets, avenues for movement of machinery, and corridors for traverse by livestock. The value of the remaining acreage is more severely impacted when the fee title condemned limits access in some manner.

■ To combat these twin evils, the sponsor introduced legislation requiring the Department to value condemned land "by taking into consideration the total acreage originally involved in the farm land parcel, including that portion of such parcel already part of a right of way ***." (Ill. Rev. Stat. 1981, ch. 121, par. 4—501.) Of course, that portion already part of a right of way includes the right of access. Words used in a statute are to be given their plain and ordinary meaning. (*Kozak v. Retirement Board* (1981), 99 Ill. App. 3d 1015, 425 N.E.2d 1371.) Applying that rule to the instant case, we are directed to consider the value of the entire farm parcel, including the portion burdened by roadway, with whatever value that latter portion may have. Implicit in this approach is the assumption that the proper measure of damages includes not only the fair market value of the fee title condemned, but also any possible damage to the remainder. To interpret the statute in this manner would appear consistent with its plain and ordinary meaning, while representing no departure from existing law. *Department of Public Works & Buildings v. Griffin* (1922), 305 Ill. 585, 137 N.E. 523; *Department of Public Works & Buildings v. Barton* (1939), 371 Ill. 11, 19 N.E.2d 935.

Statutes should likewise be construed to effect legislative intent and purpose. (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 424 N.E.2d 1239.) In seeking that intent, a court must consider the evils which a statute seeks to remedy and the goals it seeks to attain. (*Miller v. Illinois Department of Public Aid* (1981), 94 Ill. App. 3d 11, 418 N.E.2d 178.) In this instance, since the concerns about dissection and loss of access are already addressed by existing law, we must assume that the General Assembly intended to reverse the Department's policy of refusing "to make payment" for the value

of land encumbered by easement.

■ ■ Under the common law rule, no compensation other than nominal damages is given to an owner of the fee in land already burdened with an easement in the nature of a public road when the land is condemned for a public road. (26 Am. Jur. 2d *Eminent Domain*, sec. 209 (1966).) If the General Assembly had understood the Department of Transportation to be following this existing rule at the time it adopted House Bill 567, we would endeavor to give substance to the action of the legislature by concluding that mere nominal damages are insufficient payment; however, since the Department's prior position, as explained by Representative Ewing to the General Assembly, was to make no payment in such circumstances, it is appropriate to construe the legislative enactment as rejecting this executive departure from the common law and as affirming the law as it existed. (*Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 381 N.E.2d 1367; *Proud v. W. S. Bills & Sons, Inc.* (1970), 119 Ill. App. 2d 33, 255 N.E.2d 64.) Hence, we conclude that House Bill 567 worked no change in existing law, but rather retrospectively clarified an erroneous executive application of that law.

It follows, then, that the decision of the circuit court of Will County was in error. Accordingly, we reverse and remand this cause for further proceedings consistent herewith.

Reversed and remanded.

BARRY, P.J., and ALLOY, J., concur.