# Rockford & Interurban Railway Company v. George M. Keyt, et al.

## Gen. No. 4,365.

1. STREETS—*presumption as to title to.* In the absence of proof, it is presumed that the fee to a street is in the municipality.

2. ABUTTING PROPERTY OWNER—*right of, to recover for injury by common carrier.* An abutting property owner has a right of action at law to recover damages for an injury resulting by reason of the unauthorized maintenance by a common carrier of a freight business in front of his premises, and the injury being continuing in nature is permanent in the sense that a recovery may be had in a single action for all damages, past, present and future.

3. MEASURE OF DAMAGES—*in action by abutting property owner against common carrier.* Where a traction company has been organized for the purpose of conducting the business of carrying passengers and without authority departs from the terms of its charter and undertakes the business of carrying freight, the measure of damages in an action by an abutting property owner is the depreciation in the market value resulting from the maintenance by such company of such freight business.

4. DEPRECIATION OF VALUE—*what evidence incompetent to establish.* Where the question at issue is as to the extent of the depreciation of the market value of real property, it is incompetent to show conduct of defendant merely of a temporary character which could in no wise affect permanently the value of the property in question.

5. VALUE OF PROPERTY—*what evidence is incompetent in determining.* In an action to recover for injury to real property, where the question at issue is as to the extent of the depreciation of the market value of such property, it is not competent to show the particular use to which such property is or may be put unless such use gives to the property an increased market value over and above what it would be worth for any other purpose.

VICKERS, J., dissenting.

Action on the case for injury to real property. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed November 23, 1904.

FISHER & NORTH, for appellant.

R. K. WELSH, for appellees.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

This is an appeal from a judgment in the Circuit Court

of Winnebago county against appellant in favor of appellees for $3,500 damages alleged to have resulted to certain real estate belonging to them in the city of Rockford from the carrying on of a freight business over appellant's tracks in front of and adjacent to appellees' property.

Originally the Rockford Railway Light & Power Company owned and operated a street railway system in the city of Rockford for the purpose of carrying passengers. The ordinance granting it the use of the streets contains this provision: "The tracks upon said street shall only be used for passenger traffic and a freight traffic shall not be carried on over said tracks." Prior to the commencement of this suit, the Rockford Railway Light & Power Company was consolidated with and became the property of appellant which then owned and operated an interurban line between Rockford and Belvidere. After the consolidation appellant conducted the street railway system in the city of Rockford, using the tracks, or a part of them, also for its interurban line. It also gave another company operating an interurban line between Rockford and Beloit and Janesville, Wisconsin, the privilege of using the tracks in the city of Rockford. Both these interurban companies were engaged in carrying on a passenger, freight and express business, and without any ordinance or franchise from the city authorizing them to do so, used the tracks of the old company, the Rockford Railway Light & Power Company, to run their freight cars over. Appellees own the north half of lot seven and the south half of lot eight in block six in the city of Rockford, which has a frontage on Wyman street of sixty-six feet and extends back from the street something over two hundred feet. Upon this property appellees had erected a two-story brick veneered building with a ten-foot stone basement, which they occupied and used as a livery and sales stable. The front of the building set back from the east line of Wyman street five feet. Wyman street ran north and south and was used by all of appellant's cars. After the consolidation before mentioned and before the commencement of this suit, appellant bought

property having a sixty-six foot frontage on Wyman street and adjoining appellees' property on the north, upon which it erected a building for use as a freight depot in the handling, loading, and unloading of freight. To get its cars into and out of this freight depot to receive and discharge freight, appellant built a spur track starting from the main track in Wyman street in front of and a little north of the center of appellees' building and curving northeast and then east into the depot. Both appellant and the other interurban line mentioned use this spur track and depot in handling freight and express. Each company operates one freight car which makes two trips daily.

Appellees claim their property has been depreciated in value by reason of the construction and operation of this spur track and the carrying on of the freight business by appellant, and this suit was brought to recover therefor. One count of the declaration after reciting the consolidation of the Rockford Railway Light & Power Company with appellant, charges that appellant unlawfully and without authority from the city to do so, constructed the spur or switch track in Wyman street and has ever since carried on "upon and over said spur track a heavy freight traffic, and did continually during every day of said period draw freight cars over said track and said spur, and left said freight cars standing on said track and said spur in front of the plaintiffs' said premises and loaded and unloaded the same at said point.   *   *   *   And to the end that the same may become and remain permanent, said defendant is now in conjunction with its said switch or spur track, maintaining a freight house of a permanent character immediately north of the said described premises of the plaintiffs, and abutting upon the said Wyman street; that in addition to the passage of said freight cars and stopping and unloading the same, as heretofore set forth, in said street and on the side thereof, in front of and adjoining plaintiffs' premises, said freight business causes large numbers of conveyances and vehicles to come and congregate at or near the said cars in the said street for the purpose of loading and unloading freight,

parcels and packages, and thereby aggravates and increases the nuisance created and maintained as hereinbefore set forth." The other count charges substantially the same matters with less verbiage. Appellant pleaded not guilty, and it was stipulated that under that plea it might prove all matters of defense that could be proven under properly drawn special pleas.

On the trial the court, over the objections of appellant, permitted appellees to prove that their property had been depreciated in value and permanently damaged by the acts of appellant charged in the declaration, and held that the measure of damages if the proof warranted a recovery, was the depreciation in the fair market value of the property resulting from the acts complained of.

It is contended by appellant that this was erroneous; that the carrying on of a freight business by it in the city of Rockford was unauthorized and unlawful and subject to be terminated at any time by proceedings to abate it as a nuisance, and that the recovery should have been limited to the damages sustained by appellees to their business up to the time of the commencement of the suit. This question was disposed of by the Supreme Court in Doane v. Lake St. El. R. R. Co., 165 Ill. 510. In that case an abutting property owner sought to enjoin the defendant from constructing and operating an elevated railroad in the street on the ground that it had not secured the signatures of the owners of the amount of frontage required by law, and that therefore the ordinance purporting to authorize the construction of the railroad was void and conferred no authority upon defendant. The Circuit Court sustained a demurrer to the bill and dismissed it for want of equity and its judgment was affirmed by the Appellate and Supreme Courts. In the opinion of the Supreme Court, it is said : "The real ground upon which relief by injunction is denied in such case is, that the use of the street being within the purposes for which it is laid out, and therefore a proper use, the right to convey is properly a question between the defendant and the municipality having the

control of its streets and charged with the duty of keeping them free from unlawful obstructions, or between the defendant and the public generally, the individual being left to his action for damages for any injury resulting to his property. He has no standing in equity on account of public injury or for the purpose of inflicting punishment upon the defendant for its wrongful acts. He can only invoke that jurisdiction in order to protect his property from threatened injury. His injury is a depreciation of the property, which is capable of being estimated in money and recoverable in an action at law, therefore a court of equity will not interfere by injunction.  *  *  *  But it is said that, being in the street unlawfully, the obstruction is a public nuisance, subject to be abated and removed at any time, and therefore the recovery could only be had for damages to the time of bringing the suit. This position is based upon the proposition that a railroad unlawfully in a street is a public nuisance, and liable, as such, to be abated at any time and therefore a recovery for damages can only be had to the time of bringing the action, and hence a multiplicity of suits will become necessary to give the complainant a complete remedy. The position is untenable. The injury would be a continuing and permanent one, and therefore a single recovery can be had for the whole damages, present and future."

Wyman street is admitted to be a public street and the presumption of law is that the fee of said street is in the city of Rockford. City of Chester v. Wabash, Chester & Western R. R. Co., 182 Ill. 382. It is not denied that the city had the power to authorize appellant to carry freight over its lines in said Wyman street, and we think this presents an altogether different question from that arising over the use of the streets by a corporation or natural person for a purpose for which the municipal authorities had not the right to authorize it to be used. To our minds the Doane case, which has never been overruled or modified, and the authorities there cited, settle the question contrary to appellant's contention. That the law may afford the pub-

lic authorities a remedy to stop appellant from carrying on a freight business, could be of no benefit to appellees if not resorted to, and it would seem both unreasonable and unjust to compel them to suffer damages to their property, and because the public authorities might have a legal remedy to prevent appellant's using the streets for freight traffic, to hold that they could only recover for damages to their business up to the time of bringing the suit. It does not appear that the municipal authorities objected to the use made of the streets by appellant and it could not be known by appellees that they ever would interfere. The fact that they made no objections would justify appellees in assuming that appellant was carrying on its freight business with the implied consent of the city authorities. It is said in the Doane case that the damage done to private property in such cases is susceptible of compensation by a money judgment, and the proper remedy is by an action at law to have the damages assessed on the basis that the injury is permanent.

Appellant argues that if appellees are permitted to recover on the theory that their property has been permanently depreciated in value, and afterwards it should at the instance of the public authorities be compelled to cease carrying on the freight business, it would have paid damages that never accrued to or were sustained by appellees. It is sufficient to say that if appellant is in danger of suffering on account of a judgment against it for future damages which may never accrue, it is a self-imposed danger resulting from its own wrongful acts and it cannot now interpose this possible contingency as a defense against appellees who are in no way responsible for the position in which appellant fears it has placed itself. We are of opinion, therefore, that the court did not err in adopting as the measure of damages, the permanent depreciation in the value of the property.

Counsel for appellant insists that the freight business of appellant is a mere incident to the interurban system and business and that if the depreciation in the fair market

value of the property is the correct measure of damages, the entire interurban system should be considered in determining the effect the freight traffic had upon the value of appellees' property. Under the franchise of the Rockford Railway, Light & Power Company to which appellant succeeded, it had a right to maintain a passenger traffic on the streets of the city and there was no limitation upon it as to the number of cars it might use. When, however, it engaged in the freight business and built the spur track for that purpose, it was the adopting of a feature in the operation of its road, unauthorized and not contemplated by the franchise authorizing the carrying on of a passenger traffic, and rendered the company liable to an abutting property owner for all damages caused by such new feature. W. St. L. & P. Ry. Co. v. McDougall, 118 Ill. 229; Aldis v. Union El. R. R. Co., 203 Ill. 567. The question therefore was, did the use of the street by appellant for freight and express traffic depreciate the market value of appellees' property? If it depreciated its market value appellees were to that extent damaged, and if it did not, they were not damaged. The property could not be both benefited and damaged at the same time, whether the freight traffic be considered as incident to appellant's interurban system or not. We do not think the court erred or that appellant was prejudiced by the court's ruling in this respect.

We are of the opinion, however, that the court erred in admitting testimony as to the stopping of cars and loading and unloading freight and packages in the street before the completion of appellant's freight depot and building. The building sets back thirty feet from the street and the spur track leads into it. Appellant's cars are run over the spur track into the building and there receive and discharge freight. There is also a driveway into the building used by teams in hauling freight to and from it. The uncontradicted testimony offered by appellant is that since the building was completed in the fall of 1903, the cars have been run into the building and the loading and unloading done therein, and that since that time, no cars have stood

on the curve or spur for that purpose. This testimony is corroborated by appellees. Ferdinand P. Keyt testified that "since they have the driveway north of the building, they load and unload their cars back on the platform." There was also testimony of other witnesses offered by appellees that they had not seen cars stand in front of their stable to load and unload freight since the fall of 1903. It is apparent from the testimony that the use of the street and spur track in front of and adjacent to appellees' building to load and unload freight from appellant's cars, was temporary, and ceased when its building was completed, so that cars could be run into it for that purpose. Such temporary use, while it might inconvenience and damage appellant's business, could not be properly considered as affecting permanently the value of appellees' property. C. B. U. P. R. Co. v. Twine, 23 Kan. 415. Neither do we think the fact that wagons and teams in hauling freight to and from appellant's freight depot sometimes congregate in and block the street in front of their own building can be considered as an element of damages to appellees' property. By suing for permanent damages to their property appellees elected to treat the freight and express traffic carried on by appellant as permanent and the fact that this traffic was carried on without authority from the city could give appellees no greater rights, nor in any manner affect the question of their damages. So far as the parties to this suit are concerned the questions involved should be treated as if appellant was lawfully conducting its freight business and maintaining its depot in connection with that traffic. C. & E. I. R. R. Co. v. Loeb, 118 Ill. 208. Under those conditions the maintenance of their depot and hauling freight to and from it by teams could not constitute an element of damages to appellees' property. The lawful use of a street although it may and often does cause annoyance and inconvenience to a property owner, still may not constitute a ground of recovery for permanent injury to his property. Two freight cars make two trips each daily over the tracks in Wyman street, and five hundred or six hundred passenger

cars. Only one passenger car a day is run over the spur track into the freight building and that is for the purpose of housing it for the night. The freight cars come down the street from the north to the spur in front of appellees' building, then stop and back on the spur into the freight depot. The testimony shows that to stop at the spur, throw a switch and back into the building occupies about one minute's time. That the use of the street in front of appellees' property in this manner may depreciate its market value cannot be denied, but the evidence should have been confined to such use as is of a permanent character and reasonably necessary in the conduct of appellant's business. O. & M. Ry. Co. v. Watcher, 123 Ill. 440.

By the second instruction given for appellees, the court told the jury that it would be its duty in determining the amount of damages to consider "all inconveniences or obstructions actually brought about or occasioned by the carrying on of the freight traffic in question in front of and adjoining plaintiffs' property." The third instruction told the jury "to take into consideration each and every matter and element of every kind so far as the same appears from the evidence." By these instructions the jury might well understand that the temporary use of the street before the completion of the freight building, the stopping of cars in the street and unloading them both in front of appellees' building and in the street adjacent to it, and the driving in and stopping of teams in front of their depot building, were elements proper to be considered in determining the permanent depreciation in value of the premises.

Such uses of the street so far as unlawful were but temporary, could not be authorized by the city council and were subject to be abated any time at the instance of appellees or any other interested person. Pennsylvania Co. v. City of Chicago, 181 Ill. 289. But it was not unlawful for appellant to construct and maintain a freight depot on the lot adjoining appellees' premises. Such use by appellant of its lot could afford no ground for recovery by appellees for depreciation in the value of their premises. It might be

that appellees would have preferred as neighbors a private residence or a retail dry goods store, but the owner of a lot cannot be required to consult the wishes of his neighbor about the uses to which he will put his premises so long as he uses them for a lawful purpose.

On the trial the court permitted appellees to prove the damage to their property as a livery and sales stable and this is complained of by appellant. The proper measure of damages was the difference between the value of the premises before and after the use of the street for freight and express traffic. Was its market value as property depreciated? If for the purpose for which it was used by the owners it had an intrinsic value over and above its market value for any other purpose, that value belonged to the owners and would be a proper element to be considered. But although it may have been convenient and favorably located for the business for which it was used, unless this gave it an increased market value above what it would be worth for any other purpose, it could not be controlling. Dupuis v. C. & N. W. Ry. Co., 115 Ill. 97; Hercules Iron Works v. E. J. & E. Ry. Co., 141 Ill. 491; R. I. & P. Ry. Co. v. Leisy Brewing Co., 174 Ill. 547.

Appellees claimed that the property was specially adapted to the uses to which it was put and on that account had an especial value. It was not, in our opinion, erroneous to allow the proof offered on that subject. The court also very properly allowed appellant to offer proof that the property is well adapted to other uses and that its market value has not been affected by the establishment of the freight traffic by appellant. The instruction given by the court on this subject, we think was substantially in harmony with the authorities. We are also of opinion that no error was committed by the court in failing to instruct the jury that the improved condition of the pavement in front of appellees' property claimed to have been made by appellant when it built the spur track, should be considered in determining whether the property was depreciated in value.

. Whether the verdict was excessive it is not now neces-
sary to decide, but in view of the fact that improper testi-
mony was heard which might well contribute to such a
result, and the further fact that the jury was instructed to
consider it in arriving at their verdict, we are not satisfied
to approve so large a verdict and judgment, and for the
errors indicated the judgment is reversed and the cause
remanded.

*Reversed and remanded.*

VICKERS, J.:
I do not concur in the conclusion reached in this case.
In my opinion the judgment below is right and ought to
be affirmed.