(No. 11001.)

THE CITY OF CHICAGO, Appellee, *vs.* JAMES F. LORD *et al.*—
(DAVID SHAPIRO *et al.* Appellants.)

*Opinion filed December 21, 1916—Rehearing denied Feb. 17, 1917.*

EMINENT DOMAIN—*what should not be considered in estimating value of land taken.* Where the front portion of a corner lot is to be taken for the widening of the street the owner is entitled to the actual value of the part taken without regard to the effect, if any, of the improvement upon the part not taken, and it is not proper to consider the fact that the part not taken will be a corner lot after the improvement is made.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

SABATH, STAFFORD & SABATH, (CHARLES B. STAFFORD, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY ATWOOD, EUGENE H. DUPEE, and TOLMAN, REDFIELD & SEXTON, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The city of Chicago on April 7, 1911, instituted condemnation proceedings in the superior court of Cook county for the widening of East and West Twelfth street, in that city. David Shapiro and Hilda Shapiro, appellants, (two of the defendants in that proceeding,) are the owners of lots 7 and 8, in block 5, in Brand's addition to Chicago. The property is located at the southeast corner of Twelfth and Miller streets, and it has a frontage of 45.4 feet on Twelfth street and a depth of 100 feet fronting on Miller street. The property is improved with a two-story frame building erected thirty-five or forty years ago. The ground floor is rented for stores and shops. The upper floor is a large auditorium, used for lodge meetings and various en-

tertainments and public meetings. By the condemnation proceeding the city seeks to take a strip off this lot 42 feet in depth along the entire front of Twelfth street, making the part taken a tract 45.4 feet by 42 feet, and leaving a remainder fronting on Miller street of 58 by 45.4 feet. It was conceded that the building would be a total loss, because under the building ordinances of the city of Chicago it cannot be reconstructed as a frame building. A jury was waived and the cause was tried before the court. The court viewed the premises, and after hearing the testimony entered judgment awarding the owners as compensation for the land taken the sum of $6673.80, and for that part of the building to be taken, including all damage to the remainder of the building not taken, the sum of $3750. The property remaining is assessed for benefits in the sum of $1080.

Appellants contend that the amount awarded for compensation is inadequate, and this appeal is prosecuted solely upon that ground. The amount of the award is the exact amount fixed in the roll prepared by the city and filed in the condemnation proceedings. David Shapiro testified that he bought the premises in question in 1910 for the sum of $23,000; that since that time he has expended $5000 in improvements, making the total amount of his investment $28,000; that while he was making his improvements he was offered $40,000 for the premises and refused to sell for that sum. Since he completed his improvements he has received $295 a month rental, one store room being rented for the sum of $135 per month, the other for $75 per month, and the hall on the second floor for $85 per month. There is a first mortgage on the premises for the sum of $18,000 and a balance of $2000 due on a second mortgage. The second mortgage was originally for $10,000. The testimony offered on the part of appellants further tended to prove that the building on the premises is solid and sound and in good condition, with the exception of the outside, which has not been kept in good repair; that allowing for

depreciation the present value of the building is $9500 and that the value of the part of the lot taken is $9534.

On the part of the city two witnesses were offered to prove the condition and value of the building. One of these testified that it would cost $10,750 to erect the building in 1911, and that it had depreciated in value seventy per cent, leaving the net value at that time $3225. The other witness testified that the net value of the building in 1911 was $3550.29. Two witnesses also testified on the part of the city as to the damage to the lot. These witnesses both qualified as expert real estate dealers and men familiar with real estate values in the vicinity of the lot in question. The testimony of these two witnesses was practically identical. Each of them testified that the value of the entire lot was $3.50 per square foot; that the value of the part of the lot taken, considered as a part of the whole lot, was the same as the value of the part of the lot not taken, and that the value of the part taken on April 7, 1911, was $6673.80. Each of these witnesses admitted that a corner lot in this vicinity was more valuable than an inside lot. Each admitted also that this property could be advantageously subdivided east and west into two lots, leaving a lot 42 feet wide on the north and a lot 58 feet wide on the south, and that when so subdivided the north or corner lot would be worth more than the south or inside lot. They based their estimate of the value of the part of this lot taken upon the theory that the whole of the premises was a corner lot, and, being considered as one lot, one part of it was worth as much as another, and that as the whole was worth but $3.50 per square foot that part taken was worth but $3.50 per square foot. Each of these witnesses declined to say what in his opinion would be the value of the north 42 feet if separated from the remainder of the lot, basing his refusal to answer upon the ground that the question called for a more careful study of the situation than he had given it. On cross-examination these witnesses, in justifying their

position that one part of the lot was worth as much as another, stated that they took into account that when this property was taken the street would be widened and the remainder of the lot would still be a corner lot. This was an improper element to consider in determining the value of the property taken. Appellants were entitled to the actual value of the property taken, without regard to the effect, if any, the proposed improvement would have upon the part of the lot not taken. They concede that the remainder of the lot will be benefited and make no objection to the assessment of benefits against it. According to all the testimony the property taken was the most valuable part of the lot, and when considered as separated from the remainder was worth more in proportion to its area than the portion of the lot not taken. The court evidently adopted the theory of appellee, as the amount of compensation for the property taken is in the exact figures testified to by the two witnesses for appellee.

Counsel for the city insist that this judgment having been arrived at after a view of the premises by the court should not be disturbed unless the court committed some error of law or the judgment was outside the range of the amounts testified to. This cause is not brought within the rule laid down in numerous decisions, that where the court has viewed the premises and the evidence is conflicting and the amount is within the range of values as testified to on the trial the judgment will not be disturbed except for some error of law. The witnesses for the city included improper elements in arriving at their opinion as to the value of the property taken and their testimony should for that reason be excluded. *City of Kankakee* v. *Illinois Central Railroad Co.* 263 Ill. 589; *City of Lake Forest* v. *Buckley,* (*ante,* p. 38.)

The judgment of the superior court is reversed and the cause is remanded.        *Reversed and remanded.*