(No. 26078.—

Frank Posinski *et al.* Appellees, *vs.* The Chicago, Milwaukee, St. Paul and Pacific Railroad Company *et al.* Appellants.

*Opinion filed April 15, 1941.*

JOHN E. CASSIDY, Attorney General, M. L. BLUHM, and W. L. HUNTER, (JEROME F. DIXON, BEN SCHWARTZ, and STEPHEN FLEMING, of counsel,) for appellants.

URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, and ROBERT F. DEWEY, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On October 25, 1940, the circuit court of Cook county ordered the defendants, the Chicago, Milwaukee, St. Paul

and Pacific Railroad Company, the Department of Public Works and Buildings, its director, Charles P. Casey, a district engineer of the department, Kendrick Harger, and W. A. Black, to negotiate with the plaintiffs and agree upon the amount that should be paid for damage to plaintiff's property, caused by the construction of an underpass at the intersection of Waukegan Road and the tracks of the defendant railroad company, in the village of Glenview. If this were not done, or if condemnation proceedings were not instituted within sixty days, the railroad company and the director of the department were ordered to remove the underpass and restore the property to its original condition. Defendants have appealed directly to this court on the ground that a construction of the constitutional provision (section 26 of article 4) prohibiting suits against the State is involved.

Frank and Josephine Posinski own the land in question situate in the village of Glenview. It has a frontage of 550 feet on the west side of Waukegan Road, which is a part of State highway No. 42-A and runs in a north and south direction. It is of substantially the same elevation as appellees' property and is the only means of ingress to and egress from it. Approximately 200 feet south of appellees' property defendant railroad company's tracks cross Waukegan Road in a northwesterly direction, and the right of way forms the western boundary of the Posinski tract. On May 2, 1934, the Illinois Commerce Commission ordered the railroad company and the Department of Public Works to construct a grade separation at the above crossing because of its dangerous character. Plans for an underpass were approved by the commission and construction was begun. The railroad company moved its tracks to the south of the crossing pending completion of the underpass. Waukegan Road was blocked off for a short distance to the north and to the south of the old crossing, and the

excavation of the underpass and ditches was started. The appellees filed their original complaint June 25, 1936. They alleged their property was being damaged by the construction of the underpass, and that they had not been compensated therefor as provided by section 13 of article 2 of our constitution. They prayed that the defendants then named be restrained from doing any further work, and that they be required to remove all obstructions which had been placed upon the roadway. The motion of appellees for a temporary injunction was denied July 19, 1936, and about November of that year the underpass was completed. The construction of the north approach left a slight depression of Waukegan Road in front of appellees' property which amounted to a foot and three quarters at the south end of the land and was but six inches a hundred feet farther north. After the underpass was completed, the railroad company rebuilt its tracks over it at an increased elevation of 3 or 3½ feet. From the center of the underpass, the tracks descend at a rate of one-half of one per cent, or six inches per hundred feet. In other words, the tracks return to their original elevation at a point approximately 700 feet to the north of the underpass. On October 11, 1937, by leave of court, the complaint was amended, and, for the first time, the director of the Department of Public Works and Buildings was made a defendant, but the complaint was not amended in any other way. On November 15, 1937, the director moved to dismiss the amended complaint because the suit was originally against the Department of Public Works, in other words against the State; that such a suit is prohibited by our constitution; and that he could not, by amendment, be made a party defendant to a suit which was void *ab initio*. Although the record does not show what was done, this motion was presumably denied for the director filed his answer to the amended complaint July 19, 1938. He alleged the suit could not be

maintained because it was one against the State, and also that, at the time this suit was filed, a vast amount of money had already been expended in construction work on the underpass, and that he was not made a party until after the underpass was completed on or about November 1, 1936, at a cost in excess of $250,000. These facts were alleged as showing *laches*.

The cause was referred to a master on October 11, 1938, and again on June 28, 1940. The master's report was filed October 25, 1940, and in it he found that the appellees had been damaged by the construction of the underpass, and that they were entitled to have it removed unless eminent domain proceedings were instituted within a reasonable time to fix their damages. Exceptions to the master's report were overruled and a decree was entered October 25, 1940, which ordered all the defendants, within sixty days, to negotiate with the plaintiffs and agree upon their damages, or to file a condemnation suit to determine the amount due plaintiffs. In default of both, the director of the Department of Public Works and the railroad company were ordered to remove the underpass and restore the road to its former condition. This appeal followed.

Appellants contend this is a suit against the State which is prohibited by section 26 of article 4 of our constitution. That section declares the State of Illinois shall never be made a party defendant in any court of law or equity. The State is not *eo nomine* a party to this suit, but the suit is against the Department of Public Works and Buildings, and its director. In *Noorman* v. *Department of Public Works,* 366 Ill. 216, this court held the Department of Public Works and Buildings to be a part of the State and exempt from suit under the constitution. Contrary to appellees' contention, the decree ran against the department. It is clear the circuit court had no jurisdiction over it and the decree against the department must be reversed. Can

the appellees maintain this suit against the director of the Department of Public Works and Buildings? It is their contention that a suit against him is not a suit against the State and, therefore, it can be maintained. Whether this is so depends on the type of action that is being brought, and the relief that is being sought. If the State is not directly and adversely affected by the relief sought, the suit is not one against the State. In a proper case the director may be required by *mandamus* to institute condemnation proceedings within a reasonable time to ascertain the damage to the plaintiff's property. (*People* v. *Kingery,* 369 Ill. 289; *People* v. *Smith,* 374 id. 286.) On the other hand, a suit to foreclose a mortgage on land owned by the State, brought against the director of the department charged with the care, supervision, and management of the property, was held in *Schwing* v. *Miles,* 367 Ill. 436, to be a suit against the State and therefore prohibited by the constitution, although the State was not named as a defendant. This court pointed out that although the suit was ostensibly against one of the officers of the State, the relief sought was in reality against the State itself, and this was an attempt to coerce the State by judicial order. The rule laid down in that case was that a suit nominally against an officer or agency with relation to some matter in which defendant represents the State in action and liability, is a suit against the State if the State, while not a party to the record, is the real party against which relief is sought. Stated differently, where the rights of the State are directly and adversely affected by the judgment or decree sought against the officer of the State, the suit is against the State, and is prohibited by the constitution. This principle controls the instant case. Here, the appellees are seeking to compel the director to interfere with and destroy the property of the State,—*i. e.,* the underpass. Since the property of the State is involved, the State is directly and adversely affected by

the suit and decree, and the decree must be held to be against the State. Consequently, the decree against the director must be reversed.

If it be argued that this holding deprives the appellees of the right guaranteed by section 13 of article 2 of our constitution, that their property shall not be taken or damaged for public use without just compensation, the answer is that they have misconceived their remedy. Where damages result to property the owner may bring *mandamus* against the director to compel him to institute condemnation proceedings to ascertain the amount of such damages. *People* v. *Kingery, supra.*

The mandatory injunction was also against the railroad company. It is conceded the railroad company did not have charge of the construction of the underpass, and that the underpass is not under its control or ownership. The railroad company, therefore, cannot be held liable for damage, if any, caused to appellees' property by the underpass. The charge against the railroad company is that, by reason of the increased elevation of the tracks along appellees' property, it will be more difficult to construct switching facilities to that property, if that is ever desired to be done. The decreased accessibility to the tracks is alleged to be a proper element of damage to the appellees for which the railroad company is liable. That is not the rule in this State. A railroad company may raise or lower its tracks as the demands of its business, the efficiency, economy and safety of operation, or the action of the municipal authorities require. Consequently, it is not liable to an adjoining property owner for damages caused to his property by reason of the decreased accessibility to its tracks. (*Lord* v. *City of Chicago,* 274 Ill. 313.) Appellees rely on *South Park Comrs.* v. *Ayer,* 237 Ill. 211, as a contrary holding. That case involved a condemnation proceeding, and this court held that, as between the owners of the property and the condemning authorities, the de-

creased accessibility to the tracks was an element of damage for which the owner was entitled to be compensated. But the owner was compensated in that case by the condemning authorities and not by the railroad company. In the *Lord case* it was held that a railroad company was not liable to an adjoining landowner for damage caused by the decreased accessibility to its tracks, and it is the one in point here. Appellees say that case was decided while the 1909 statute was in effect, (Hurd's Stat. 1909, chap. 114, par. 301,) while the present case is governed by a 1921 statute. (Laws of 1921, sec. 45, p. 726.) The statutes referred to are similar and both, in substance, require railroad companies to make connections and provide necessary switch-tracks upon the application of any shipper, provided such connection is reasonably practicable. The *Lord case* held that, regardless of such a statute, the railroad company was not liable. It is controlling here and compels us to reverse the decree against the railroad company.

The mandatory injunction was also against Kendrick Harger, District Engineer of the Department of Public Works and Buildings, and W. A. Black. In *Noorman* v. *Department of Public Works and Buildings, supra,* this court held that a suit to enjoin construction of a viaduct would not lie against Harger because he was a mere employee of the department against whom service or a decree would not run, as he was without authority. Therefore, this decree against him must be reversed. The record does not disclose the position occupied by W. A. Black, but apparently he is connected in some way with the defendant railroad company. Since the decree was reversed as to it, it must also be reversed as to him.

Other questions raised in the briefs need not be considered. The decree of the circuit court of Cook county is reversed.

*Decree reversed.*