(No. 35864.—

Trunkline Gas Company, Appellee, *vs.* Francis Walker O'Bryan *et al.,* Appellants.

*Opinion filed Dec. 1, 1960.—Rehearing denied Jan. 18, 1961.*

John J. Lawless, and Solon & Solon, both of Champaign, (James A. Solon, of counsel,) for appellants.

Busch, Harrington & Porter, of Champaign, and Lemna & Lee, of Tuscola, for appellee.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff, the Trunkline Gas Company, filed four separate petitions in the circuit court of Champaign County seeking to condemn, for a pipe-line right of way, an easement strip extending across farm lands owned by the respective defendants. In each instance, defendants filed a cross petition for damages to land not taken and the causes were thereafter consolidated for purposes of trial. After trial by a jury, which viewed the premises, defendants recovered verdicts and judgments totaling $3,865.50 for 6.5 acres lying within the easement strip. As to the cross petitions, however, the court directed verdicts for the plaintiff and it is from this action of the court that defendants appeal. The sole issue raised is whether the court properly excluded

the testimony by which defendants sought to prove damages to land lying outside the easement strip.

Before looking to the disputed testimony, a better understanding of the issue involved requires a brief explanation of the project to be undertaken by the plaintiff. The allegations of the petition, which are binding on the condemnor, (*East Peoria Sanitary Dist.* v. *Toledo, Peoria and Western Railroad Co.* 353 Ill. 296,) show that the easement strip will be 66 feet wide, that a 26-inch pipe will be buried therein at a minimum of 30 inches below the surface of the earth, that the strip will not be fenced, that plaintiff does not require or seek to obtain the exclusive use and occupancy of any portion of the strip, and that the owners of the land, while not permitted to build structures thereon, will have the right to cultivate the strip over the top of the line, or to make such other use of it as will not interfere with the operation of the pipe line. The petitions further set forth that, as an element of the easement, plaintiff requires authority to remove from the strip trees, shrubs, crops, fences and tile, insofar as may be necessary to the construction, operation and maintenance of the line, but that plaintiff will repair and replace all fence and tile damaged or removed.

Howard Hibbler, plaintiff's project engineer, testified there would be no valves, pipe or structures above the surface of the ground on defendants' land and that all construction activities would be carried out within the limits of the 66-foot easement strip. He explained that a crew first cuts fences, then clears and grades the right of way, after which a trench, 36 inches wide and 4 feet 8 inches deep is dug. Pipe is then hauled onto the property on large trucks and is placed in the trench, which is then backfilled. The latter operation, he stated, would leave a ridge 38 inches wide and from 6 to 8 inches in height, which the witness estimated would settle to the level of the surrounding ground within a period of one month, or after the first substantial rainfall. When cross-examined extensively about

the procedure when drain tile was encountered, Hibbler testified that the trench bottom was lowered to allow a clearance of 6 inches between the pipe and the tile, that the tiles were swabbed to check for leakage, and that, during the backfill operation, earth under the tile is padded by hand. He likewise explained the process by which a leak in the line would be repaired and said that once the line was in operation, an airplane would patrol it every two weeks to check for erosion or leakage.

To sustain their burden of proving damage to land not taken, (See: *City of Chicago* v. *Provus,* 415 Ill. 618,) defendants sought to introduce the testimony of five witnesses who were of the opinion that the taking of the easement strip for pipe-line purposes would reduce the value of the remaining lands from $55 to $60 an acre. In each instance, however, on either or both grounds, the trial court sustained objections that the witnesses were not qualified by experience to give such opinions, or that the opinions were based upon remote, speculative or other improper elements of damage. A sixth witness, Walter O'Bryan, also testified for defendants but was never asked whether he had an opinion as to the depreciation of the land on his farm outside the easement strip. Defendants contend here that the court abused its discretion and committed error with respect to each of the witnesses whose opinions as to value were excluded.

Edward C. Butzow and Earl C. Maddock, two of the defendants, sought to give testimony in their own behalf, and although each was shown to have long experience in farming, including the cultivation of areas where excavations had been made for drainage tile, the trial court agreed with plaintiff that the witnesses were not qualified to give their opinions because they had never farmed land over a pipe line.

The question of the market value of real property has been said to be one of fact, not of art or science, (*Illinois*

*Power and Light Corp.* v. *Talbott,* 321 Ill. 538,) and, accordingly, the simple rule to determine the competency of a witness to testify to values in a condemnation proceeding has been that the witness must have some peculiar means of forming an intelligent and correct judgment as to value, or the effect upon it of a particular improvement, beyond what is presumed to be possessed by men generally. (*County of Cook* v. *Holland,* 3 Ill.2d 36; *Mauvaisterre Drainage and Levee Dist.* v. *Wabash Railway Co.* 299 Ill. 299.) While we can agree with the court in the present case that the witnesses were not qualified to express opinions based upon the effect the pipe line would have on drainage, or upon the dangers from leakage in the line, we cannot agree that the witnesses were incompetent to testify to the manner in which the soil conditions left by the pipe line excavation would affect values through the alleged inconveniences to farming which would result. Butzow was a lifelong farmer, his father having farmed a part of the land in question before him, and Maddock, in addition to a lifetime of farming experience, had served as a drainage commissioner and as president of the Farm Bureau. Both were fully acquainted with the land and values in the area, they were fully aware of the nature of the plaintiff's project and, from their extensive farming expererience, were possessed of means beyond that of men generally to form an intelligent and correct judgment as to how farming the excavated area would cause inconveniences that would affect the value of land. It is true they had no experience in farming over a pipe line, but the test of competency we have adopted does not admit to such a narrow delineation. (Cf. *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) Moreover, farming over a small ridge such as will be created here, would seem to us to create no different or greater problem than would occur in year-to-year farming operations. Accordingly, it is our opinion that the trial court committed an abuse of discretion when it measured the

competency of the witnesses in terms of experience under exactly identical conditions.

There remains, however, the question of whether the testimony of these witnesses, and the three remaining witnesses, was properly refused because their opinions as to value were based upon remote, speculative and improper elements of damage. To warrant a recovery for damage to land not taken, the damage must be direct and proximate, (*Illinois Power and Light Corp.* v. *Barnett,* 338 Ill. 499; *East St. Louis Light and Power Co.* v. *Cohen,* 333 Ill. 218,) and not such as is merely possible or may be conceived by the imagination. (*Central Illinois Public Service Co.* v. *Lee,* 409 Ill. 19; *Illinois Iowa Power Co.* v. *Guest,* 370 Ill. 160.) The mere possibility of a remote and contingent injury, the happening of which is speculative and uncertain, is not an element entering into damage to land not taken. (*Super-Power Co. of Illinois* v. *Naffziger,* 353 Ill. 441; *Dept. of Public Works and Buildings* v. *McBride,* 338 Ill. 347.) And where a witness has considered improper elements of damage, his testimony will be deemed incompetent, (*City of Chicago* v. *Central National Bank in Chicago,* 5 Ill.2d 164; *Dept. of Public Works and Buildings* v. *Lambert,* 411 Ill. 183,) even though in part based upon proper elements. *Illinois Power and Light Corp.* v. *Cooper,* 322 Ill. 11; *City of Chicago* v. *Lord,* 276 Ill. 533; *Illinois Power and Light Corp.* v. *Lummis,* 323 Ill. 625.

We see no useful purpose in setting forth the testimony of each witness in detail, or in relating all of the elements of damage upon which they based their opinions that the land not taken would be depreciated in value. In general, the elements mentioned by all were: the inconvenience in farming that would be caused by the pipe line, the possible effects upon surface and tile drainage, and the dangers of fire and explosion attending the pipe line.

In the matter of agricultural lands, permanent interference with farming caused by an improvement, as distin-

guished from temporary interference or inconvenience, has at various times been held to be a proper element of damage to land not taken. (See: *Illinois Power and Light Corp.* v. *Barnett,* 338 Ill. 499; *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584; *Central Illinois Public Service Co.* v. *Lee,* 409 Ill. 19; 17 I.L.P. Eminent Domain, sec. 74.) Comparing favorably in some respects to evidence present in the decisions last cited, the witnesses in this case, based upon estimates that the ridge would not subside for a period of two to five years, testified the improvement would make it necessary to farm the land in two tracts, thus affecting crop rotation and requiring the farm to be cultivated in point rows, a more costly and time-consuming process than would otherwise be required. Because of these evidential similarities, defendants assert that the interferences testified to must likewise be considered as a proper element of damage in this case. We do not agree that such a conclusion follows. In the first place the interferences in the *Barnett, Rhein* and *Lee* cases were permanent ones occasioned by the erection of transmission towers on the surface of the ground. Here, defendants' witnesses concede that the interference is temporary and, this being so, would not have the effect of permanently depreciating the value of the land not taken. It has long been settled that temporary consequential interference with the use of property occasioned by the construction of a public improvement is not a proper element of damage. (See: *Peck* v. *Chicago Railways Co.,* 270 Ill. 34; *Osgood* v. *City of Chicago,* 154 Ill. 194; *Rockford & Interurban Ry. Co.* v. *Keyt,* 117 Ill. App. 32.) Moreover, in the instant case, the testimony of defendants' witnesses is predicated upon a contingency that farm equipment will not be able to pass over the pipe-line ridge for a period of two to five years. In view of the evidence that the 36-inch ridge of loose soil will have a maximum height of but 6 to 8 inches, and in the absence of any proof that subsidence of the ridge would produce deep or dangerous depressions,

it is our opinion that the contingency indulged in is extremely remote and speculative. The measure of damages in the case of land not taken is the difference between the value of the property unaffected by the improvement, and its value as affected by it. (See: 17 I.L.P., Eminent Domain, sec. 64.) When that test is applied here, we cannot say that the temporary interference with farming which will result is a proper element of damage.

Two witnesses speculated that the improvement would affect the surface drainage upon the lands not taken, but made no explanation as to why this was so, and two witnesses likewise stated their opinions were based on the possibility that the line would interfere with future tiling, if any should be needed. On the state of the record, these elements are not only speculative, but also overlook that plaintiff bound itself by its petitions to restore all drain tile to the condition in which it existed before the improvement.

The majority of the witnesses testified that the danger of fire and explosion attending a leakage of gas from the line would depreciate the value of the land not taken. While we are of the opinion such element of damage would be entirely proper where a high pressure gas line is situated in close proximity to buildings or habitations, (cf. *Northern Indiana Public Service Co.* v. *Darling,* 128 Ind. App. 456, 154 N.E.2d 881,) or where there is some showing that the highest and best use of the land not taken is for residential or factory purposes, (cf. *Texas Pipe Line Co.* v. *Barbe,* 229 La. 191, 85 So.2d. 260; *Texas Pipe Line Co.* v. *National Gasoline Co.* 203 La. 787, 14 So.2d 636,) neither of these circumstances were shown to exist in the present case. Absent some proximity to real danger, we have held in the case of high tension lines that the law cannot regard the mere fear of the presence of such an instrumentality as an element of depreciation resting on a substantial basis, and we think that the same reasoning is applicable here. See:

*Illinois Power and Light Corp.* v. *Cooper*, 322 Ill. 11, at 16-17.

. Defendants likewise urge upon us numerous railroad right-of-way cases where the danger of fire from passing trains has been considered as a proper element of damage to land not taken. (Eg. *Chicago, Peoria and St. Louis Railway Co.* v. *Blume*, 137 Ill. 448, and *Illinois, Iowa and Minnesota Railway Co.* v. *Ring*, 219 Ill. 91; but see *Conness* v. *Indiana, Illinois and Iowa Railroad Co.* 193 Ill. 464.) However, we see little analogy in the two situations. The decisions relied upon reflect a period in our history when the emission of sparks from a railroad engine was so commonplace that the danger of fire and the destruction of crops and buildings was neither speculative nor remote. Here, we have an entirely different instrumentality, with which great care and precautions are taken and which, in the course of its normal operation, is not attended by the occurrence of fires or explosions with any degree of certainty. A closer analogy may be drawn, we believe, from those cases dealing with high tension lines extending over agricultural lands where we have held that unforeseen accidents, such as falling wires or fires occasioned thereby, are not proper elements of damage. See *Illinois Power and Light Corp.* v. *Cooper*, 322 Ill. 11; *Illinois Power and Light Corp.* v. *Talbott*, 321 Ill. 538; *Illinois Power and Light Corp.* v. *Lummis*, 323 Ill. 625.

Without the discussion of other elements relied upon by the witnesses which we deem improper, we conclude, on the basis of the particular record before us, that the testimony of defendants' witnesses was properly excluded. Accordingly, the judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*