**Central Illinois Light Company, Petitioner-Appellant, v. Mary Allen Porter, et al., Defendants-Appellees.**

Gen. No. 67–34.

Third District.

June 3, 1968.

Rehearing denied July 31, 1968.

O'Hern, O'Hern & Wombacher, of Peoria, for appellant.

Walter D. Boyle and Linn Goldsmith, of Hennepin, and William J. Wimbiscus, Jr., of Spring Valley, for appellees.

HOFFMAN, J.

This is an appeal from a jury award of condemnation damages.

The petitioner, Central Illinois Light Company, brought condemnation proceedings against defendants to secure sites for three steel towers and an easement 120 feet in width for an electric transmission line. The defendants filed cross-petitions for damages to their property not taken. The matter came on for trial. Appraisal witnesses for both sides testified that the highest, best and *only* use of defendants' property was for duck hunting purposes. The jury viewed the premises.

The jury awarded separate damages for the tower site, the balance of the easement strip, and the land not taken outside the easement strip. There is no quarrel as to the amounts for the tower sites. With regard to the balance of the easement strip, the defendants' appraisers testified that there would be a total taking (i. e., that the easement would have no fair cash value after construction of a power line), and the jury's verdict indicated that this view was adopted. With regard to defendants' lands outside the easement strip, petitioner's appraisers testified that there would be no damages, while defendants' appraisers testified to considerable damage. The jury awarded damages, but substantially below the figures given by defendants' appraisers.

It is petitioner's position on this appeal that, so far as the easement strip is concerned, the residual remaining must be of some value, and that, regarding the land not taken, damages thereto are purely speculative and rest upon no objective basis.

The land involved is marsh and overflow land in the Illinois River bottoms. There appears to be no question but what the land was visited by multitudes of wild ducks during their fall migratory flights. It was agreed that this property's *only* use was for duck hunting purposes

and that duck hunting lands have an ascertainable market value.

There was considerable testimony introduced on defendants' behalf regarding the effect of the construction of the electric transmission lines upon duck hunting over this property. The towers to be constructed each had four legs, two are to be 174 feet high with 48 feet between each leg, and the third is to be 140 feet high with 37 feet between each leg. The wires are to be highly polished light aluminum, which will sway in the wind, and there are ten porcelain insulators on each tower.

Defendants introduced the testimony of highly qualified and experienced men regarding the effect of these lines upon the flight of migratory ducks and duck hunting in the area.

Frank Bellrose, a wild life research biologist of the Illinois Natural History Survey for over 28 years, who has written 60 papers dealing with waterfowl, and who has taken annual waterfowl censuses in the Illinois River Valley for the past 28 years, testified that for many years he has observed the behavior of ducks in the vicinity of electric transmission lines; that the line affects ducks' behavior adversely, in that immediately over the line there is an almost 100 percent absence of ducks and that the effect reaches out as far as a quarter of a mile on each side of the line; that ducks are disturbed by anything which reflects light or which moves, such as a line swaying in the wind; and that in his opinion in the whole area the construction of the power line would probably eliminate two-thirds of the duck kill.

Julius Kowalski, a biologist, who is an officer of Ducks Unlimited, an advisor to the Illinois and Wisconsin Departments of Conservation, an officer of the Princeton Game and Fish Club, who is familiar with the area involved in this suit, and who has had experience with power lines constructed over the Princeton Club grounds, tes-

tified that at the Princeton Club grounds, where hunting was good before the construction of the power lines, it dropped off up to one-half mile on each side of the line. He further testified that the birds will see the proposed line from one-half mile away and that the movement and humming of the lines will deter birds, and that in his opinion the erection of the proposed line would make this property virtually useless for duck hunting.

Frank Drennen, who operates a commercial duck hunting club, testified that he had purchased property with a power line and one tower 175 feet over it, that prior to the erection of the line the duck hunting was good, but that since the erection it is almost impossible to kill birds at that location and that he had to move from that property. He further testified that in his opinion the percentage of kill on the right of way on the proposed line would be nothing and that the effect would extend one-half mile in either direction.

Mike Byczynski, a conservation officer of the State of Illinois, who has engaged in hunting ducks and conservation work all his life and who has experienced hunting near transmission lines, and Murray Crowder, an outdoor consultant to Sears, Roebuck & Company, and an officer of a duck hunting club, who is familiar with the area in question and who has hunted where electric transmission lines have been built, both testified that in their opinion the erection of the proposed lines and towers will interfere with duck hunting up to within one-half mile on each side.

Defendants' appraisal witness, Harold Morine, Jr., gave as his opinion that the tracts, prior to the erection of the line, would have a value of from $375 to $525 per acre; after the construction of the line he testified that there would be no value on the easement strip since it would be worthless for hunting ducks. He further gave as his opinion that the land outside of the easement strip would be reduced considerably in value due to the fact

that the duck kill thereupon would be substantially reduced.

Ellery E. Lay, the defendants' other appraisal witness, appraised the value of the land, prior to the erection of the line, at between $400 and $550 per acre and testified to similar reductions in value as Mr. Morine testified to. All of these defense witnesses are obviously experienced and capable, and were qualified to give the testimony which they gave in this case. It has often been held that the question of the market value of land is not a question of art or science, but that it is a question of fact to be proved like any other fact, and that any person who is acquainted with the land and has knowledge of real estate values in the vicinity is competent to testify as to its value. Trunkline Gas Co. v. O'Bryan, 21 Ill2d 95, 98, 171 NE2d 45; Illinois Power & Light Corp. v. Talbott, 321 Ill 538, 543, 152 NE 486. The question of the qualification of witnesses as to the value of property rests largely with the discretion of the trial court. City of Geneseo v. Schultz, 257 Ill 273, 279, 100 NE 926. We agree with the trial court that the witnesses were competent to testify. In addition, the jury viewed the premises and their verdicts are within the range of the evidence given by these witnesses.

It is the well established rule that:

> "Where an award is made by a jury in an eminent domain proceeding in which the evidence is conflicting, and the jury views the property and fixes the amount of compensation within the range of the evidence, such a verdict will not be disturbed unless there has been a clear and palpable mistake or the verdict was the result of passion or prejudice." Trustees of Schools of Tp. No. 42, Board of Education of School Dist. No. 57, Cook County v. Schroeder, 23 Ill2d 74, 79, 177 NE2d 178.

■ There is no suggestion that the verdicts were motivated by passion or prejudice. There is no clear and palpable mistake. Courts of review have repeatedly stated that they will not disturb the decision of the trial court in such circumstances.

We have studied the briefs and arguments, and have carefully examined the errors, mainly technical, assigned by petitioner. We can find no reason to disturb the judgment rendered.

Accordingly, said judgment will be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.