Corn Belt Bank, Trustee, Petitioner-Appellant, *v.* William F. Cellini, Secretary of the Department of Transportation, Defendant-Appellee.

(No. 12248;

Fourth District—April 25, 1974.

Dunn, Brady, Goebel, Ulbrich, Hayes and Morel, of Bloomington (George R. Flynn, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (William P. Ryan and William B. Lawrence, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is from an order of the court dismissing a petition for a writ of mandamus to compel the defendant to institute condemnation proceedings with respect to plaintiff's property adjacent to which the defendant had constructed a viaduct for the improvement of a State highway.

The property in issue, owned by the Corn Belt Bank as trustee under a land trust, is located in Bloomington and is improved with a large warehouse consisting of four stories and a basement and was occupied by four business tenants at the time the petition was filed. The petition alleged that there had been convenient and easy access from South Center Street which was indispensable to the full use and enjoyment of the warehouse, and that petitioner's property was taken and damaged by the construction of the viaduct along and over the previously existing grade of Center Street. On October 10, 1972, the court issued a writ of mandamus after the defendant failed to answer the petition. However, on October 11 that order was vacated on the motion of the plaintiff and defendant was ordered to plead in response to the petition within a stated time. On October 12, 1972, the defendant filed an answer admitting that there had been convenient and easy access to the warehouse on plaintiff's property and admitting the completion of the viaduct improvement, but denying that plaintiff's property was taken or damaged by such construction, and denying that the defendant had a duty or even the power or authority to commence eminent domain proceedings in such a situation.

A hearing was commenced on December 15, 1972, at which time the plaintiff's written demand on the defendant was introduced and plaintiff's two witnesses testified. A real estate broker, Mr. Ball, testified to his experience and qualifications as a real estate appraiser, and then testified to his personal familiarity with the plaintiff's building, giving the opinion that the construction and existence of the South Center Street viaduct has resulted in damage to the value of the petitioner's property. When asked to state the basis of that conclusion, Mr. Ball said "* * * three points, which would be the loss of the railroad siding, accessibility to use * * * by railroad; secondly, would be the ability to meet the conventional type of over-the-road equipment, tractor-trailer and so on, access to the building; thirdly would be the loss of any possible display area that would be beneficial to somebody with a type of sales operation

there in the east end." Mr. Ball further testified that in his opinion the best use of the property was for storage or the sale of heavy equipment —its present use. When asked about dollar values for the building and land as testified to by petitioner's other witness, one of the beneficiaries of the land trust, Mr. Ball said he could not make an estimate on value because it "* * * would be dependent upon the income that it derives and the relative stability of that income, and it would be evident that the stability of that income has decreased, but to what extent or whether or not the income prior to the construction would warrant that price or not, I have not figured it out." Thereafter apparently upon the assumption that an appraisal based on the change in rental income was required, a continuance was granted after the defendant moved to strike Mr. Ball's testimony on the grounds that he had testified that the building's income would determine its value, but that he had made no study of the income before and after the viaduct's construction.

The hearing was resumed on January 31, 1972, and the real estate appraiser Ball was recalled apparently for the purpose of more specifically establishing the damage suffered as a result of the construction of the viaduct. Ball again testified to his personal familiarity with the premises saying that before the construction Center Street was on ground level giving access to the first floor of petitioner's building, while after the railroad overpass was completed the street was approximately at the top of the second floor and that access was seriously impaired. When asked to explain in detail how he arrived at his appraisal, Mr. Ball testified to three standard evaluation methods, return on investment, replacement cost, and sale of comparable structures. Mr. Ball testified that using the three, he estimated the value prior to construction at $107,037 and after at $74,927, or a loss of $32,110 due to the viaduct. In addition to the three standard methods, Mr. Ball testified that there had also been an increase in vandalism, specifically many broken windows, and that this security problem due to the viaduct's existence had a psychological effect making the building less desirable to tenants, which was a factor in the market place.

The defendant then moved to strike Mr. Ball's testimony on the grounds that he had improper elements in arriving at his appraisal. The petitioner replied that Mr. Ball had merely referred to all the factors affecting property values in addition to the income approach and the comparable sales approach, and that since he had testified that in his opinion the overpass had caused a decrease in the value of the property, that its access had been decreased, and that the efficiency of the building for its highest and best use had been decreased, his opinion and testimony were quite proper.

The court said "Well the Court finds that the witness has indeed considered improper elements in arriving at his appraisal, and the testimony of Mr. Paul Ball is stricken." When the plaintiff asked to recall Mr. Ball for redirect examination the court said there was nothing to redirect "* * * If you want to recall him you may do so, but there is no redirect left for you, Mr. Flynn. Everything has been stricken at this point." The court refused to grant the plaintiff a continuance and denied leave for plaintiff to submit written authorities. The court then found the petitioner had failed to prove the necessary elements and requirements for the issuance of a writ of mandamus and denied the petition.

Thereafter the plaintiff again sought to recall Mr. Ball and the court repeated several times that petitioner would not be allowed to impeach his own witness, in response to which the plaintiff said he did not wish to impeach Mr. Ball but to have him testify as to the damage done to the warehouse on the basis of his general knowledge of real estate, his qualifications and background previously having been established, leaving aside the factors which the court had found improper. The court said that Mr. Ball had already testified that his opinion was based partially on improper elements and that he would not be allowed to be requestioned on damages aside from the elements held improper. Petitioner asked to be allowed to make an offer of proof based on the expert's general knowledge as an appraiser and without regard to the psychological or security factors about which he had testified earlier. The court again stated that Mr. Ball would not be allowed to change his testimony and refused the offer of proof, reaffirming his denial of the petition.

The trial court prepared a memorandum setting out his reasons for dismissing the petition. The court noted that section 15, article I of the Illinois Constitution provides that private property shall not be taken or damaged for the public use without just compensation as provided by law and that the constitutional provision is self-executing and cannot be annulled by non-action of a head of a department of government. The court said that a property owner's right to damages is absolute and not affected by the fact that no property is taken and that the Secretary of the Department of Transportation may be compelled by mandamus to institute eminent domain proceedings to ascertain damages. The court then said that to be entitled to a writ of mandamus it is necessary to show a clear legal right to the relief demanded and this petitioner must prove a clear right to damages actually incurred and recoverable in an action of condemnation, and that any damages to be so compensated must be direct and proximate and not such as are merely possible or speculative or that may be conceived by the imagination. After so summarizing the general law on the matter the court then said: "The Peti-

tioner herein must prove by evidence that his property has been damaged by proper elements affecting its fair cash market value after the completion of the improvement. In this case the Petitioner has failed to offer sufficient proof that he has sustained such damages that are compensable in a condemnation proceeding and it is for that reason that the court found on January 31, 1973 that the Petitioner failed to show a clear and undoubted right to a Writ of Mandamus and the Petition for Writ of Mandamus was therefore denied."

We find no fault with the court's statement of law. However, it seems the trial court imposed too great a burden on the plaintiff as to particularity of proof of specific injuries, and erred in not allowing the plaintiff's witness to be recalled to testify where at most only some of the elements considered in arriving at the total amount of damages were improper. Even if the expert did testify to and consider some elements which were incompensable, he also testified to the loss of access to the railroad spur and severely hindered access to the street. Only if all the elements considered by the plaintiff's expert witness were improper would he clearly not be entitled to writ of mandamus.

■■ Mandamus will lie to command performance of an official act which is ministerial. (*People ex rel. Richter v. Telford,* 103 Ill.App.2d 132, 242 N.E.2d 464.) Where damages result to property from highway improvements, the owner may bring mandamus against the Director of the Department of Public Works and Buildings to compel him to institute condemnation proceedings to ascertain the amount of damages. *Posinski v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 376 Ill. 346, 33 N.E.2d 869.

■■ The case which most directly applies to the instant problem is *People ex rel. Haynes v. Rosenstone,* 16 Ill.2d 513, 158 N.E.2d 577. In that case a plaintiff who owned land abutting a state highway filed a petition for writ of mandamus against the Director seeking to compel him to institute proceedings under the Eminent Domain Act to ascertain damages to plaintiff's property allegedly caused by changes in the highway. As in the instant case, none of the plaintiff's land was actually taken, so the defendant argued that he could not be required to file an eminent domain action for ascertaining plaintiff's damages caused by water due to raising the highway and the installation of inadequate drainage. The supreme court said: "* * * We adhere to the view that a property owner who can prove that his property has been damaged by the State for the benefit of the public can compel the institution of eminent domain proceedings." (16 Ill.2d at p. 516.) The supreme court then discussed the requisite showing of damage to a petitioner's property and said: "To justify issuance of the writ, the mandamus proceeding must

determine the fact of damage.'" (16 Ill.2d at p. 517.) In that case the supreme court reversed and remanded, stating that it was error to enter judgment for the petitioner on the pleadings. However the language which concerns the instant case is that to the effect that the mandamus proceeding is to determine *the fact of damage.* Thus the mandamus proceeding is distinguished from the condemnation proceeding itself where for recovery to be warranted the damage must be direct and proximate rather than remote and contingent or speculative, and where if a witness has considered improper elements of damage his testimony is deemed incompetent even though based in part on proper elements. *Trunkline Gas Co. v. O'Bryan,* 21 Ill.2d 95, 171 N.E.2d 45.

Although at the second hearing of December 31 Mr. Ball, in response to further questions as to the extent of damage and how he arrived at monetary values, referred to increased vandalism and the psychological loss of having the overpass immediately in front of the building, it appears there was substantial testimony which would establish the fact of damage if unrebutted and this testimony *was* unrebutted at the time of the dismissal of defendant's petition by the trial judge.

██ As heretofore observed, at the initial hearing on December 15, as well as at the later hearing on December 31, Mr. Ball testified that access to the railroad spur was terminated and that access to large over-the-road trucks was curtailed. It is clear that access rights are property rights which cannot be taken away or materially impaired without just compensation. (*Department of Public Works & Buildings v. Mabee,* 22 Ill.2d 202, 174 N.E.2d 801.) Although the plaintiff's witness may have testified to and considered improper elements in arriving at his opinion as to the amount of damages resulting as expressed in terms of monetary loss, the petitioner was not required to prove the precise monetary amount of damage sustained, that being an element of proof required in the eminent domain proceeding as contrasted to the proof required to support his petition for writ of mandamus in which proceeding he need only prove "the fact of damage." (*Rosenstone.*) It was therefore error for the trial court to strike *all* of his testimony concerning damage. That ruling effectively precluded petitioner from establishing the fact of damage. Accordingly the order dismissing the petition for the writ of mandamus is reversed and the cause remanded for further proceedings consonant with the views herein expressed.

Reversed and remanded.

SMITH, P. J., and CRAVEN, J., concur.